THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* GEORGE NEWHAUSER, Defendant.

City Magistrate's Court of New York, Municipal Term, Borough of Queens, October 14, 1949.

[redacted]

*John P. McGrath, Corporation Counsel (John Daly* of counsel), for plaintiff.

*Samuel Cohen* and *Thomas I. Sheridan* for defendant.

RAMSGATE, M. The defendant moved to dismiss the information in the instant case on the ground that subdivision f of section 435–16.0 of the Administrative Code of the City of New York which he is alleged to have violated is invalid and unconstitutional.

The information under attack alleges:

" * * * George Newhauser (now here) did wilfully and unlawfully violate the provisions of Section 435–16.0, subd. f of the Administrative Code of the City of New York, committed in a manner described as follows:

" Deponent now states that at the above time and place, he observed the defendant, in the course of avigating an aircraft, make a landing in an unlawful manner, in that the defendant did not conform to the traffic pattern, prescribed for the said airport, by the Civil Aeronautics Board. That more particularly the defendant, in making a landing on Runway #31 of the said airport, did cut into the said pattern at a point not authorized by the Air Traffic Control, and at variance with the prescribed pattern for said runway.

" Deponent further states that Captain Gustav Crawford, of the Division of Aviation of the Police Department of the City of New York, whose corroborative affidavit is attached to and made part of this complaint, did observe the defendant make his final approach to Runway #31 of the said airport, over the southwest section of Flushing Bay, at an altitude of 800 feet

and did enter the prescribed pattern for said runway at a point approximately two and one half miles north of the said approach.

"That the traffic pattern for Runway #31, at the said airport was adopted by the Civil Aeronautics Board to become effective on March 1, 1949, and provides under Section 60.108 of the Air Traffic Rules, and more particularly Sections 1 and 2 (b) (2) of the Traffic Patterns, as follows:

'Landing. Final approach from an altitude of at least 1200 feet over extreme southern tip of Flushing Meadow Park, descending over the park and water in so far as practical.'

"That by reason of the foregoing, the said defendant violated the provisions of Section 435–16.0 subd. f of the Administrative Code of the City of New York."

The corroborating affidavit submitted by Captain Gustav Crawford, of the division of aviation of the police department of the city of New York, further alleges, " * * * That he, in company with Patrolman Walter Smith, in the course of duty, was avigating an aircraft in the vicinity of Bayside approaching said airport in a southwesterly direction. That this aircraft was avigating in such a manner that the final approach to Runway #31 of the said airport was made over the southwest section of Flushing at an altitude of less than 800 feet and the prescribed pattern for the said runway was not entered until a point approximately two and one half miles north of the beginning of the said pattern."

### Local Law Involved

Section 435–16.0 of chapter 18 of the Administrative Code of the City of New York, commonly referred to as Local Law No. 55 of 1948, provides as follows: " f. *Air traffic rules.* It shall be unlawful for any person to avigate an aircraft within the limits of the city in any manner prohibited by any provision of, or contrary to the rules and regulations of, the civil aeronautics administration or the civil aeronautics board."

And further provides as follows: " i. *Violations.* Any person who violates any of the provisions of this section shall be guilty of a misdemeanor."

An examination of the legislation under consideration discloses that Local Law No. 55 of 1948, which includes section 435–16.0 of chapter 18 of the Administrative Code of the City of New York, was adopted pursuant to the powers conferred upon it by the State Legislature. (New York City Charter [1938], §§ 21, 27; City Home Rule Law § 11.)

The grant of power to the municipalities by the State has its origin in the Home Rule Amendment to the Constitution adopted in November, 1923. (N. Y. Const., art. IX, § 12; see also, *City of New York* v. *Village of Lawrence,* 250 N. Y. 429 [1929].)

Local laws passed in accordance with the authority granted by the State Legislature are to be judged by the same standards as an act of the Legislature itself. (*Matter of Mooney* v. *Cohen,* 272 N. Y. 33 [1936]; *Matter of Brown Printing Co.,* 285 N. Y. 47 [1941]; *New Orleans Water Works Co.* v. *New Orleans,* 164 U. S. 471.)

In considering the legislation adopted in the instant case it should be noted that the municipal authorities passed this local law after conferences with the Civil Aeronautics Board. The air traffic pattern which the defendant allegedly violated was laid out by the Civil Aeronautics Board, a Federal agency. It is not disputed that this local law as promulgated by the city council of the city of New York adopted in its entirety the Air Traffic Rules as a standard of conduct for airplane pilots flying aircraft and making landings at its municipal airports.

The necessity for such legislation has been demonstrated by two collisions of aircraft with the tall buildings in this city. It is also evident that the civil aeronautics authorities, realizing the danger of low flying aircraft and the necessity of aircraft being kept at safe altitudes above this municipality, set a pattern of landing, and designated the legal altitude at which aircraft must fly over its populated areas, enacting these rules pursuant to its authority.

The local law in question adopted *in toto* Part 60 (Civil Aeronautics Board, Air Traffic Rules, § 60.108; 14 Federal Register 479) prescribing the traffic pattern for landing on Runway No. 31 (in question) at La Guardia Airport: " (2) *Landing.* Final approach from an altitude of at least 1200 feet over extreme southern tip of Flushing Meadow Park descending over the park and water insofar as practical."

The adoption of the Federal standards was wholly within the local police power. (*Village of Carthage* v. *Frederick,* 122 N. Y. 268; *City of Rochester* v. *McCauley-Fien Milling Co.,* 199 N. Y. 207.)

The contention of the defendant that because some other sovereignty or agency developed a pattern the city council is deprived from sanctioning its application to the needs of its own inhabitants is without merit. To adopt a Federal regulation by incorporation or reference does not offend the principle of law concerning delegation of legislative power. In *People*

v. *Mailman* (293 N. Y. 887, affg. 182 Misc. 870, [1944]) the Appellate Part of the Court of Special Sessions, in its affirmance of the lower court's decision, held that since Federal requirements were already applicable to intrastate commerce in New York State, the adoption of them by reference did not constitute unlawful delegation of legislative authority, and said at page 876–877: "the legislation herein attacked may more properly be viewed as providing for the mere *enforcement* of existing Federal laws already applicable to all citizens of this State." (See also *Butter & Egg Merchants Assn.* v. *La Guardia,* 181 Misc. 889; *Commonwealth* v. *Alderman,* 275 Pa. 483, and *Transit Comm.* v. *Long Island R. R. Co.,* 272 N. Y. 27.)

In the *Matter of Mosner* v. *Haddock* (181 Misc. 486) the court held that the State War Emergency Act was not unconstitutional since it merely conformed State to Federal regulations.

The contention of the defendant that the case of *Darweger* v. *Staats* (267 N. Y. 290) is applicable to the situation is without merit. The *Darweger* case (*supra*) is clearly distinguishable from the case at bar. There the codes were promulgated under the National Recovery Act and were applicable only to *interstate* transactions. The sovereign power attempted to have the codes apply to *intrastate* transactions by providing that upon mere filing in the office of the Secretary of State they would become effective and provided further that a violation of the code would constitute a misdemeanor. A reading of the opinion in the *Darweger* case (*supra*) shows conclusively that the court objected to the form and method by which these Federal regulations were adopted.

In the instant case the local authorities and Federal agencies participated in drawing up and drafting the air traffic rules which were to apply to the landing and taking off of aircraft at La Guardia Airport. The enactment of Local Law No. 55 of 1948 had only the effect of implementing with the proper municipal enforcement machinery the Federal regulations already applicable to air navigation within the boundaries of the municipality.

Furthermore, in the *Darweger* case (*supra*) the court said (p. 306): "Authority to make administrative rules is not a delegation of legislative power, and such rules do not become legislation because violations thereof are punished as public offenses.

"In this day when the demands upon the State Legislatures for necessary and important laws are increasing every year we must not be rigid in our construction of legislative power. More

and more must the laws become general in form, leaving to commissions, boards or other administrative bodies the establishment of rules and regulations and the determination of the facts to which the general law will apply. To make the violation of any such adopted rule or regulation a crime, is not a delegation of legislative power.''

In *Matter of Mosner* v. *Haddock* (181 Misc. 486, *supra*, affd. 268 App. Div. 752) Mr. Justice McLAUGHLIN, in upholding the validity of the New York State War Emergency Act (L. 1942, ch. 544, as amd.) and the Resolution of the State War Council wherein Federal regulations were adopted by reference, said (pp. 487–488): '' There seems to be no force to the argument that the ruling in *Darweger* v. *Staats* (267 N. Y. 290) makes the New York State War Emergency Act unconstitutional. What was held there is that there could be no delegation to the Federal Government and its agencies of the power of the State to regulate *intrastate* transactions. Here we have a war statute which seeks to enforce laws and regulations that the citizen must obey and comply with. All that is done is to conform State regulation to Federal regulation. This does not invalidate the statute. (*Transit Comm.* v. *Long Island R. R. Co.*, 248 App. Div. 749, affd. 272 N. Y. 27.) '' (Italics supplied.)

The primary purpose of air control over any area is to secure the public safety and general health of the people. It cannot be said that aircraft flying at low altitudes and over populated areas are not a hazard. The local law involved herein is, in essence, nothing more nor less than an enforcement measure in aid of Federal legislation to regulate aircraft within the boundaries of the municipality. The air patterns adopted merely set up a lane of traffic that aircraft must follow to carry them away from populated areas, thus protecting the inhabitants below as much as possible. The law of gravity has never been repealed. Whatever goes up must come down. It is common knowledge that through no fault of a pilot or those servicing aircraft the motor or motors may stop. Therefore the aircraft must immediately descend and if it follows the pattern set out by the civil aeronautics authorities, and incorporated in Local Law No. 55, the chance of its landing or crashing in populated areas is lessened, since, if following the pattern, it should not be over populated areas.

Even were it true that Congress has exclusive authority to regulate air commerce it cannot be said that a State or municipality is precluded from enacting legislation which has the effect of enforcing Federal regulations which apply peculiarly

within the municipal limits. The primary purpose of any legislation to control aircraft is to secure the public safety and general health of all the people. The local law in the instant case is directed to the same objective. The city council acted lawfully and in harmony with the State and Federal Constitutions. (*Transit Comm.* v. *Long Island R. R. Co.,* 248 App. Div. 749 [1936], affd. 272 N. Y. 27, *supra.*)

The contention of the defendant that the exercise of police power in a field which the Federal government has occupied renders such act unconstitutional is without merit. (See *Savage* v. *Jones,* 225 U. S. 501; *Maurer* v. *Hamilton,* 309 U. S. 598.)

The enactment of the local law in no way interferes with nor does it affect air commerce. By its enactment it adopted the civil aeronautics regulations and merely supplements the enforcement of these regulations, particularly as they apply within the boundaries of the municipality. (*People* v. *Lewis,* 295 N. Y. 42 [1945]; *People* v. *Sell,* 310 Mich. 305.)

In *People* v. *Lewis* (295 N. Y. 42, 51, *supra*) which this court decided in the first instance (1945), the court said: " The local law supplements the State law by providing heavier penalties for black-market transactions in New York City of the gravest consequence to the property, safety and health of its crowded population, * * *. The situation justified stern enforcement to avoid many evils and consequent hardship, or at least the local Legislature could so decide."

The situation involved herein is more hazardous since if the municipality had no means of preventing aircraft from flying low or over any part of the municipality that the pilot should select, it is obvious with the heavy air traffic in the skies above it the hazardous conditions would become even more acute twenty-four hours a day. The enforcement machinery of the Federal government is inadequate to police every airport in every State of the union. Therefore, proper enforcement by local authorities is necessary. It is commendatory that the municipal authorities in the instant case were alert to the dangers of low flying and to the indiscriminate choice of traffic lanes over the densely populated city. The municipality endeavors only to protect its inhabitants by providing a proper enforcement of these regulations through its police department which has its own aviation division with efficient and competent police pilots effectively to maintain a proper supervision within its boundaries.

This court finds nothing in the cases cited by the defendant that precludes a municipality from passing local laws having

for their sole purpose the proper and effective enforcement of Federal regulations, or the protection of the security, welfare and health of its people.

The local law is not unconstitutional since it neither violates the provisions of the New York State Constitution nor the Constitution of the United States. Motion to dismiss information is denied.

As to the defendant's motion at the end of the People's case to dismiss the complaint the testimony of the People's witness establishes a prima facie case. Motion is denied. The defendant is held to await trial in the Court of Special Sessions and is paroled in custody of counsel.