*55 OPINION OF THE COURT
Arthur W. Schack, J.
“Sailing takes me away
To where I’ve always heard it could be.
Just a dream and the wind to carry me
and soon I will be free.” (Cross, Sailing [1979].)
Unlike the world of Christopher Cross’ para-sailor, the area of law affecting this case, via the Administrative Code of the City of New York, is highly regulated. Defendant sailed an advertising banner over the Hudson River and was charged with violating section 10-126 (d) (1) of the Administrative Code (Avigation in and over the city — Advertising). This case raises a novel issue since this regulation has rarely been invoked. Avigation is defined in Administrative Code § 10-126 (a) (4): “To pilot, steer, direct, fly or manage an aircraft in or through the air, whether controlled from the ground or otherwise,” and the statute at issue, Administrative Code § 10-126 (d) (1), states: “It shall be unlawful for any person to use, suffer or permit to be used advertising in the form of towing banners from or upon an aircraft over the limits of the city.”
Procedural History
The defendant was issued a summons on August 5, 1999 for using a boat to tow an advertisement from a para-sail while the boat was heading south on the Hudson River off North Cove near Battery Park City. Defendant subsequently appeared before Judge Robert Stolz in the SAP-2 Part on September 24, 1999, where the case was forthwithed to Judge Ellen Coin in AP-5. She permitted the defendant to appear pro se and adjourned the case to October 15, 1999 for motion practice. However, the case was next heard on October 4, 1999 and was again calendared for response and decision. The case was adjourned to November 3, 1999, when the defendant filed and served his omnibus motion. It was then adjourned for People’s response by December 10, 1999. On December 10, 1999, in AP-5, the People failed to respond to the defendant’s pro se motion. I ordered the People to respond by the end of the day or they would be precluded. They responded just prior to 5:00 p.m. that day.
It is important to note that on April 14, 1999, Judge Coin decided a case, docket No. 98N031565Z, against the same defendant involving a violation which only differed from the instant case by a subdivision of the Administrative Code the *56 defendant allegedly violated. The People allege that since Judge Coin decided on subdivision (c) of the statute, Administrative Code § 10-126, to relitigate on subdivision (d), the court should be barred from deciding this case. This court disagrees. First, two subdivisions within a statute, for our purposes, are different statutes because the differences within the same section of law can range from the conspicuous to the sublime. Second, the defendant has presented a thorough memorandum of law which includes as an exhibit a “Certificate of Waiver or Authorization” from the Federal Aviation Administration (FAA). This waiver authorizes the use of para-sails with banners on the Hudson River by the defendant.
In the instant case, the issue before the court is whether a ruling of the FAA, an administrative agency of the Federal Government, preempts a law authorized by New York State. This court rules that it does.
Factual History
Defendant, Alex Santoriello, is an officer and employee of ParaSail NYC, Ltd., a New York State corporation, in the business of flying aerial banners from boats. This company is one of many aerial advertising businesses in the New York City metropolitan area which tows aloft messages displayed on banners in the navigable airspace under the authority of a “Certificate of Waiver or Authorization” issued by the United States Department of Transportation, Federal Aviation Administration.
The Federal Aviation Administration (through the Secretary of Transportation) has specifically authorized the defendant to conduct his business in the navigable airspace where he sails his banners. The Administrative Code directly conflicts with the Federal waiver received by the defendant. The Administrative Code provides in relevant part: “It shall be unlawful for any person to use, suffer or permit to be used advertising in the form of towing banners from or upon an aircraft over the limits of the city” (Administrative Code § 10-126 [d] [1]). On August 5, 1999, defendant’s corporation towed via para-sail an advertising banner in the navigable airspace over the Hudson River. The defendant was personally issued a summons charging the defendant with a violation of the above-referenced section of the Administrative Code.
Discussion
State Authority
The case of People v Coffrin (126 NYS2d 329 [City Magistrates’ Ct, Queens County 1953]) offers insight into how *57 this dated section of the Code is applied. In Coffrin, the defendant was charged with violating a provision of the Code since he flew an aircraft towing a banner for advertising purposes. In Coffrin, the defendant argued that he was not guilty because the towing was not done “over the limits” of the City of New York as charged in the complaint, but instead was one-half mile offshore over the Atlantic Ocean. Defendant contested the constitutionality of the regulation.
The court analyzed whether the defendant avigated “over the limits” of the City or over the ocean. It decided that the regulation applies solely to aircraft “towing banners from or upon an aircraft over the limits of the city.” (Supra, at 331.) The court based its decision on a technical determination of the boundaries of Queens borrowing from a property tax application. (See, Lawkins v City of New York, 272 App Div 920.) The People, in an effort to sustain their contention that the violations herein alleged occurred “over the limits of the city” of New York argued that the defendant was within the City limits relying on case law which the court rejected as moot.
There is no provision in the Code giving permission to those who seek to tow banners by aircraft. In fact, it denies that right to them entirely. The City, by local ordinance, has completely prohibited that which State and Federal authorities permit. If the Code provided for safeguards before airplane banner towing permission over the limits of the City of New York is granted, by reason of the congested nature of this great metropolitan area, or for other cogent reasons, it would not then be in conflict with either the State statutes or Federal regulations, but would be in consonance therewith. If this ordinance is constitutional, there is nothing to stop every hamlet, town, village and municipality in the State from passing a similar ordinance, thereby prohibiting throughout the State that which the State itself and the Federal Government expressly permit.
There is no doubt that even where the Federal Government has enacted laws dealing with a particular subject matter, State or local regulation in that field is not proscribed unless national uniformity is essential. (Savage v Jones, 225 US 501; Federal Compress & Warehouse Co. v McLean, 291 US 17; Maurer v Hamilton, 309 US 598; People v Lewis, 295 NY 42; People v Newhauser, 197 Misc 54.) However, if the local ordinance entirely proscribes and prohibits that which is permitted by the Federal law, it must be uniformly stricken down by our appellate courts.
*58 In Quaker Oats Co. v City of New York (295 NY 527, 534, affd sub nom. Hill Packing Co. v City of New York, 331 US 787), the Court said: “Equally settled is the rule that, even if the Federal Government has legislated in a particular field, local regulation in that field is not necessarily prohibited unless national uniformity is essential. The State or municipal statute will be stricken only if — in terms or in practical administration — it conflicts with the Federal law or infringes on its policy.” In that case the City’s local law was held unconstitutional as to the Quaker Oats Co. because it was found to be in direct conflict with existing Federal law. It is our conclusion that the local provision is inconsistent with the requirements of the Federal law, for, as we view it, the City forbids to interstate commerce what the Government has authorized (Quaker Oats Co. v City of New York, at 536). Preemption occurs when State or local law actually conflicts with Federal law, such as where “compliance with both federal and state regulations is a physical impossibility” or where State and local law stand as an obstacle to the accomplishment and execution of the purposes and objectives of Congress. (Florida Lime & Avocado Growers v Paul, 373 US 132, 142-143 [1963]; Hines v Davidowitz, 312 US 52, 67-68 [1941].)
Federal Authority
In Blue Sky Entertainment v Town of Gardiner (711 F Supp 678 [ND NY 1989]), defendant attempted to defend the constitutionality of a Town law stating that it should not be preempted by Federal law. Defendant relied on Parachutes, Inc. v Township of Lakewood (121 NJ Super 48, 296 A2d 71 [1972]). In Parachutes, Inc. the court upheld a local ordinance governing a local airport which forbade aircraft noise exceeding 50 decibels during the night and 60 decibels during the day. The court concluded that a municipality “may regulate the noise from airplanes hovering and cruising at low levels for sport parachuting.” (Parachutes, Inc. v Township of Lakewood, 121 NJ Super, at 51, 296 A2d, at 72.) It was not convinced that there was Federal preemption of the ordinance. Since Parachutes, Inc. was decided prior to City of Burbank v Lockheed Air Term. (411 US 624 [1973]), this court is hesitant to view Parachutes, Inc. as persuasive. Of course, the Parachutes, Inc. decision is not binding authority on this court.
The United States Supreme Court in City of Burbank v Lockheed Air Term. (supra) stated in no uncertain terms that a City ordinance prohibiting jet aircraft from taking off between *59 the hours of 11:00 p.m. and 7:00 a.m. was invalid because Congress, by its enactment of the Federal Aviation Act and the Noise Control Act preempted State and local control over aircraft noise. The United States Supreme Court cited the Federal Aviation Act of 1958 (49 USC former § 1508 [a], currently 49 USC § 40103), which provided in relevant part, “The United States of America is declared to possess and exercise complete and exclusive national sovereignty in the airspace of the United States.”
The instant case is distinguished from Blue Sky Entertainment (supra). The action related to the statute before the court does not create a nuisance (potential hazard) as it entailed in Blue Sky. While it can be argued that flying a banner is an eyesore, in no way does it come close to the nuisance of airplanes flying overhead in a residential community.
At trial, in American Airlines v Town of Hempstead (398 F2d 369 [2d Cir 1968]), the Town’s demonstration of the sound levels recorded in the Town and the showings of overflight frequency proves that airplane noise is a factor affecting people’s decisions to acquire or dispose of interests in real property in the Town. In an attempt to deal with the problem, the Town added a new article to its Unnecessary Noise Ordinance, forbidding anyone from operating a mechanism or device (including airplanes) which creates a noise within the Town exceeding either of two “limiting noise spectra.” (Supra, at 370.)
Credible evidence was adduced that the noise of an aircraft overflight in Hempstead is frequently intense enough to interrupt sleep, conversation and the conduct of religious services, and to submerge for the duration of the maximum noise part of the overflight the sound of radio, phonograph and television. Credible evidence was adduced that the noise of an aircraft overflight in Hempstead is frequently intense enough to interrupt classroom activities in schools and to be a source of discomfort to the ill and distraction to the well.
Claiming that the ordinance would prohibit airplanes using JFK Airport from flying over the Town, and thus would restrict the landing and take-off patterns and procedures normally adhered to by those airplanes, nine major American-flag air carriers, the Port Authority of New York, Charles H. Ruby as president of the Air Line Pilots Association, three airline pilots, individually and as representatives of their class, and the Administrator of the Federal Aviation Agency (as intervenor) sued to enjoin the enforcement of the ordinance against them.
*60 The court concluded that some noise ordinances necessarily regulate flight paths, and the United States District Court for the Eastern District of New York found that Hempstead’s is one of those. In view of that finding, the court upheld the injunction of the District Court.
Conclusion
“The Administrator [of the FAA] shall prescribe air traffic regulations on the flight of aircraft * * * for—
“(A) navigating, protecting and identifying aircraft;
“(B) protecting individuals and property on the ground.” (49 USC §40103 [b] [2].)
Even assuming that defendant’s para-sail is considered an aircraft, his actions are prescribed under the Federal arm of Government. 49 USC § 40103 (a) (1) provides that “[t]he United States Government has exclusive sovereignty of airspace of the United States.” This Act grants to the Administrator of the FAA (by delegation from the United States Secretary of Transportation) broad authority to regulate the use of the Nation’s navigable airspace. “Navigable airspace” is defined as including all “airspace above the minimum altitudes of flight prescribed by regulations * * * to ensure safety in the takeoff and landing of aircraft.” (49 USC § 40102 [30].) Above all else the Act states that “[a] citizen of the United States has a public right of transit through the navigable airspace” (49 USC § 40103 [a] [2]). Thus, the legislative intent of the Act was to preserve the rights of the citizens of the United States.
The defendant has applied for and received a “Certificate of Waiver or Authorization” from the FAA which allows him to operate a moored kite (para-sail) from a vessel for advertising purposes over the Hudson River, inter alia, up to proscribed altitude. Furthermore, the FAA defines a para-sail as a moored kite, not an aircraft. This court sees no escape from the conclusion that however salutary and well intentioned the Administrative Code may be, it does in fact entirely prohibit, not regulate, what the Federal Government has authorized. Therefore, Administrative Code § 10-126 (d) (1) is unconstitutional on its face. The Federal statute, as applied, does not disturb the City’s environment. Defendant’s motion to dismiss is hereby granted.