**BLUE SKY ENTERTAINMENT, INC.,
the Ranch Parachute Club, Ltd., and
William F. Franz, Plaintiffs,**

v.

**TOWN OF GARDINER, Defendant.**

No. 88–CV–1328.

United States District Court,
N.D. New York.

April 19, 1989.

Daniel Donnelly, Garrison, N.Y., for plaintiffs.

Kellar & Kellar, Kingston, N.Y. (Norman Kellar, of counsel), for defendant.

## MEMORANDUM–DECISION AND ORDER

MUNSON, District Judge.

In this action, plaintiffs seek to enjoin the enforcement of Town Law 6 of 1988 of the Town of Gardiner ("the Town Law," "Town Law 6," or "TL6"). The plaintiffs have asked this court to consolidate the motions for preliminary and permanent injunctions.[1] *See* Fed.R.Civ.P. 65(a)(2). At oral argument counsel for the defendant agreed to the consolidation. In short, both parties seek that this court decide the issues before it on the merits.

Town Law 6 is entitled "A Local Law to Regulate Small Airports And Parachute Jumping Centers." In addition to its regulations Town Law 6 requires the regulated entities to apply for licenses on a yearly basis for a yearly fee of $500. Two airports in the Town of Gardiner ("the Town") fit the Town Law's definition of a small airport or parachute jumping center. They are Blue Sky Ranch and Wright Field.

Both service aircraft, though parachuting occurs only at Blue Sky Ranch. Plaintiff Blue Sky Entertainment, Inc. is the owner of Blue Sky Ranch, while plaintiff, The Ranch Parachute Club, Ltd., is the operator of that airfield. Plaintiff William F. Franz is the operator of Wright Field.

Plaintiffs challenge Town Law 6 on a number of grounds. They claim portions of it violate the following: the supremacy clause of the United States Constitution, art. VI, cl. 2., the due process clause of the fourteenth amendment, and the takings clause of the fifth amendment, as applied through the fourteenth amendment. Seeking attorneys' fees, plaintiffs also present a claim under 42 U.S.C. § 1983. They allege that this court has jurisdiction over the action under 28 U.S.C. §§ 1331 (federal question jurisdiction), 1337 (granting jurisdiction when an action arises under an act of Congress regulating commerce) and 1343 (jurisdiction in civil rights actions).

## BACKGROUND

Town Law 6 was enacted on December 13, 1988. It is an extensive enactment which seeks to regulate many facets of small airports and parachute jumping centers (collectively referred to hereinafter as "the airports") within the Town. As noted, the Town Law requires that the airports be licensed and pay a yearly licensing fee of $500. TL6 §§ 2(a) and 3(a). It further states that "[t]he license shall be applied for annually for the period March 1 through February 28."[2] TL6 § 2(a). An extensive application must be filed in order to obtain the license. TL6 § 3(b).

The Town Law also requires that the airports supply adequate drinking water, sanitation facilities, and garbage receptacles. TL6 § 3(c-e). The building and structures on the airports' premises are to be kept clean, sightly and sanitary. TL6 § 3(f). Additionally, Town Law 6 requires that the airports carry liability insurance providing at least "$2,000,000 coverage for

1. Although they do not cite 28 U.S.C. § 2201, plaintiffs also seek a declaratory judgment that Town Law 6 is void and unenforceable.

2. Apparently in leap years the airports will not run afoul of the Town Law if they operate on February 29th without a license.

any one person injured, or $5,000,000 for any one accident, and $500,000 for property damage...." TL6 § 3(h). The Town Law directs that the Town be named as the insured of these policies. *Id.* It forbids pitching of tents or use of travel trailers—which are not defined—on the airports' property. TL6 § 3(i). Furthermore, it prohibits the sale, possession, use or consumption of alcohol, intoxicating beverages or controlled substances at the airports. TL6 § 3(j).

Town Law 6 also contains special provisions for parachute jumping centers ("jumping centers"). It requires that each jump be recorded in a logbook. TL6 § 4(a). Furthermore, the Town Law sets restrictions on when, where and how the jumps may occur. They are not to occur at night. TL6 § 5. They are not to occur over spectators. TL6 § 4(d). They are to be conducted so that the parachutists land only within a designated drop zone.[3] TL6 § 4(f).

Town Law 6 seeks to cut back on the frequency of low-flying aircraft. Subsection 6(a) reads: "Aircraft ascending from or descending to a parachute jumping center or small airport shall fly in such a pattern so that they are always, except in case of an emergency, above the imaginary surface parameters [sic] for that parachute jumping center or small airport, pursuant to Federal Aviation Administration Regulations Part 77, § 77.25."

The Town Law also seeks to regulate the noise emanating from the aircraft which use the airports. Planes are allowed to use the facilities of the airports if they meet one of two criteria. Aircraft may use the airports' facilities if they are listed at or below 65dbA in Federal Aviation Administration ("FAA") Circular 36–3. TL6 § 7(b). The notation "dbA" indicates a simple average of the noise at take off and landing. TL6 § 7(b) & (c). Aircraft may also use the airports if they emit no more than 80 dbA. TL6 § 7(a) & (c). Subsection 7(c) of the Town Law sets out the procedures for testing an aircraft not listed in the FAA Circular at 65dbA or less. Specifically, noise receptors are to be placed around the airports, the cost of which will be borne by the airports. TL6 § 7(c). Before an aircraft can operate at the airports pursuant to TL6 § 7(c), the Town Board must issue its approval. TL6 § 7(g).

Town Law 6 requires the airports to post with the Town Clerk a bond of $2,500. TL6 § 7(i). The bond is to be deducted from in the event that residents complain of noise from one of the airports, and the Town in response hires a noise consultant and the Town Board determines that the noise standards were violated. *Id.* When the standards have been violated, the consultant's fees will be paid from the bond. *Id.* If the bond is insufficient to pay for the consultant's services, then the offending licensee will not be allowed to resume operations until corrective action is taken, the costs incurred by the Town Board are reimbursed, and a new cash bond is posted. *Id.*

Violations of the Town Law are, apparently, punishable by fines, ranging from $50 to $500 a day, and by revocation or suspension of the license which the Town Law requires of the airports.[4] TL6 §§ 8 and 9. However, under the terms of Town Law 6, no license may be suspended or revoked without a hearing. TL6 § 9(d).

---

3. Subsection 3(g) goes even further. "No person is permitted to authorize, permit or otherwise allow any parachutist to land on any property other than a drop zone or target area within a licensed parachute jumping center at a small airport, unless so authorized by the Federal Aviation Administration on a once or twice per annum basis." TL6 § 3(g).

4. Section 8 of the Town Law is not a model of precision. It provides that "[a] violation of any provision of this *section*" shall lead to either license revocation or fines. TL6 § 8 (emphasis added). The words "this section" would appar-

ently refer to section 8 itself. Such an interpretation is supported by Town Law 6 subsection 10(b) which employs "section" to refer to a portion of the Town Law and not the entire Town Law. However, section 8 lacks substantive provisions, such as a noise ceiling, to violate. It contains only penalty provisions. A literal reading of section 8 leads to the absurd conclusion that if a licensee refuses to pay a fine or have his license revoked, he will be fined. Section 9 suffers from the same lack of precision as does section 8.

In its final section, the Town Law exempts from its provisions emergency operations and operations of the Armed Forces. TL6 § 10(a). As to severability, Town Law 6 provides that if any section of the law is found invalid, the whole law is not as a result invalid. TL6 § 10(b). Lastly, the Town Law is to become effective on the date it is filed with the Secretary of State of the State of New York. TL6 § 10(c); see N.Y.Mun.Home Rule § 27(3) (McKinney's 1969).[5]

The origin of Town Law 6 lies in Town Law 2, an enactment which similarly tried to regulate the airports regulated by Town Law 6. Town Law 2 was enacted on June 14, 1988. In a letter dated June 15, 1987 [6] and addressed to defendant's counsel, Regional Counsel for the FAA attacked portions of the proposed Town Law 2. She stated:

> The Federal Aviation Administration (FAA) objects to this proposed ordinance on the grounds that to the extent it would regulate parachute jumping, aircraft operations and aircraft noise, it is an unconstitutional exercise of the Town's powers because (1) it is preempted by federal regulation of the field and (2) it would impose an undue burden on interstate commerce.

It is well-settled that FAA has been delegated exclusive responsibility by Congress for the safe and efficient management of the navigable airspace of the United States. See City of Burbank v. Lockheed Air Terminal, 411 U.S. 624, 626–27, 93 S.Ct. 1854, 1856–57, 36 L.Ed.2d 547 (1973).

The FAA has also been delegated exclusive responsibility for regulating aircraft noise pursuant to the Federal Aviation Act of 1958, 49 U.S.C. Section 1301 et seq., preempting state and local control. City of Burbank v. Lockheed Air Terminal, supra, 411 U.S. at 633, 93 S.Ct. at 1859.

To the extent the ordinance regulates land use in the Town of Gardiner, it is not preempted by federal regulation of aviation.

Town Law 2 was later amended on July 11, 1988 and its successor, Town Law 6, was enacted on December 13, 1988. Under a stipulation between the parties, however, counsel for the defendant agreed that Town Law 6 would not be filed with the Secretary of State until January 30, 1989.

Plaintiffs' complaint alleges seven claims. First, plaintiffs contend that §§ 2, 3(a), 3(b)(i) and (iii), a portion of 3(h),[7] 4, 5, 6, 7, 8, 9 and 10(a) violate the supremacy clause of the United States Constitution and the due process clause of the four-

---

**5.** Section 27 of the Municipal Home Rule applies to "local laws," which, if adopted by a town board, must be "adopted pursuant to [Chapter 36–a] or to other authorization of a state statute or charter by the legislative body of a local government...." N.Y.Mun.Home Rule § 2(9). However, a "local law" may not include "an *ordinance,* resolution or other similar act of the legislative body or of any other board or body." *Id.* (emphasis added); *Carleton Tennis Associates, Inc. v. Town of Clay,* 131 Misc.2d 522, 524, 500 N.Y.S.2d 908, 909 (Sup.Ct.1985).

Defendant claims that its authority to enact Town Law 6 comes from both the Municipal Home Rule Law and the state's Town Law. Because the two bodies of law each authorize a separate type of enactment, it is unclear whether Town Law 6 is an ordinance, a local law, or, if possible, both. The court mentions this because an ordinance takes effect in a different manner than does a local law. An ordinance takes effect 10 days after it has been posted and published. N.Y.Town Law § 133; *Elle v. Neenan,* 68 Misc.2d 725, 728–29, 327 N.Y.S.2d 706, 709–10 (Sup.Ct.1972). A local law becomes ef-

fective upon filing with the Secretary of State. N.Y.Mun.Home Rule § 27(3); *Carleton Tennis Associates,* 131 Misc.2d at 524, 500 N.Y.S. at 909. Since Town Law 6 provides that it will be effective when filed, the Town apparently considers the Town Law to be a "local law." Plaintiffs do not contend that defendant has failed to properly proceed in bringing Town Law 6 into effect. The court, consequently, will not determine the issue.

**6.** Upon inquiry of the court, Regional Counsel for the FAA has informed the court that the correct date is, in fact, June 15, 1988.

**7.** The portion of § 3(h) which is challenged under the first count is that which pertains to insurance for parachute jumping and aircraft flights. Technically speaking, Count 1 challenges all of § 3(h) except the provision which requires liability insurance to protect against accidents resulting from "transportation by automobile or other mode of parachutists, aircraft pilots and passengers."

teenth amendment. Second, they attack the Town Law's requirement of minimum liability insurance for automobiles used to transport parachutists, pilots or aircraft passengers.[8] In effect, this is the portion of § 3(h) not assailed in Count 1.[9] Plaintiffs contend that this portion of § 3(h) violates the due process clause of the fourteenth amendment and is preempted by state law. Third, plaintiffs allege that § 3(j), prohibiting alcohol, is preempted by state law and violates the due process clause of the fourteenth amendment. Fourth, plaintiffs attack § 3(i), regarding camping and trailers, as violative of the due process clause of the fourteenth amendment because the Town, when enacting § 3(i), allegedly acted outside its authority and failed to comply with procedural requirements. Fifth, plaintiffs contend that all of Town Law 6 violates the taking clause of the fifth amendment, as applied to the states through the fourteenth amendment. Sixth, plaintiffs attack the license fee in § 3(a) as excessive because it allegedly will not be justified by the costs incurred in enforcing the portions of Town Law 6 which are constitutional. Finally and seventh, plaintiffs also seek relief through 42 U.S.C. § 1983 in order to recover attorneys' fees. Count 7, by its own terms, incorporates each of the six previous counts. Complaint ¶ 30.

While plaintiffs contend that defendant did not respond to their second, third, fourth, sixth and seventh counts, the court concludes otherwise. Although its legal memorandum only addresses the questions of federal preemption and availability of liability insurance, the affidavit of defendant's counsel contained legal arguments.[10] For instance, in an apparent response to

Count 4 which in part alleges the Town's failure to comply with procedural requirements for enacting zoning laws, counsel contends that the Town Law is a general law and not a zoning law.[11] Counsel also contends in his affidavit that the authority for Town Law 6 lies in the New York Municipal Home Rule Law and § 130(22) of the New York Town Law ("Air-ports and Flying Fields").

Defendant's papers included, in addition to legal arguments, affidavits regarding the availability of liability insurance for the airports, off-site parachute landings on Town residents' properties, noise, and the variety of aircraft used at Blue Sky Ranch. Plaintiffs in reply papers ask the court to take the factual allegations in the affidavits offered by defendant as true. The court will do so.

On Wednesday February 1, 1989 the court heard argument on the plaintiffs' bid for a permanent injunction. At oral argument, defendant put forward an argument not contained in its papers. It contended that plaintiffs do not have standing to bring their complaint until they are cited for a violation of Town Law 6. The court will address the issue of standing as part of a general discussion of whether this court has subject matter jurisdiction.

## DISCUSSION

I. Subject Matter Jurisdiction.

 A. Federal Question or Pendent Jurisdiction.

The court holds that it has subject matter jurisdiction over Counts 1, 5, and 7 of the complaint pursuant to 28 U.S.C. § 1331, federal question jurisdiction. The allegations contained in those counts are prem-

---

**8.** Again, technically speaking, the portion of § 3(h) challenged in Count 2 is all but the portion which requires that the airports acquire liability insurance for accidents resulting from "parachute jumping or aircraft flights."

**9.** Each of the claims in the complaint is titled as a "cause of action." For the sake of brevity, the court will refer to each cause of action as a "count." For instance, that which the complaint terms "A First Cause of Action," the court will refer to as "Count 1."

**10.** The court does not approve of this method of presenting legal arguments. Local Rule 10(c) of the court states as much. It directs that "[a]n affidavit may not contain legal arguments." The court notes that counsel for the plaintiffs also presented legal arguments in his affidavits. See e.g., Reply Affidavit in Opposition ¶ 7.

**11.** At oral argument, however, defense counsel contended that § 3(i) is not preempted by federal law because it is clearly a *zoning* provision.

ised on alleged violations of federal constitutional rights. *See United States v. State of New York*, 552 F.Supp. 255, 257–58 (N.D.N.Y.1982); *Town of Springfield v. McCarren*, 549 F.Supp. 1134 (D.Vt.1982), *aff'd without decision*, 722 F.2d 728 (2d Cir.), *cert. denied*, 464 U.S. 942, 104 S.Ct. 360, 78 L.Ed.2d 322 (1983) (holding federal question jurisdiction exists to determine issue of federal preemption); *cf. Kohl Indus. Park Co. v. County of Rockland*, 710 F.2d 895 (2d Cir.1983) (takings claim is cognizable under § 1983).

■ Counts 2 and 3 allege that portions of the Town Law are preempted by state law and therefore violate the due process clause of the fourteenth amendment. The court concludes, however, that the theory of preemption of a town law by state law does not make out a violation of the fourteenth amendment due process clause. In *Pesticide Public Policy Found. v. Village of Wauconda*, 622 F.Supp. 423 (N.D.Ill. 1985), *aff'd without decision*, 826 F.2d 1068 (7th Cir.1986), the court found a pesticide ordinance preempted by state law. It addressed the state preemption claim, based in diversity, in lieu of addressing a claim under the federal supremacy clause. The court avoided the supremacy clause claim, because "federal courts have a 'strong duty to avoid constitutional issues that need not be resolved....'" *Id.* at 426 (citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 154, 99 S.Ct. 2213, 2223, 60 L.Ed.2d 777 (1979)). The *Village of Wauconda* decision implicitly stands for the proposition that a claim based on the theory of state preemption is not grounded in the federal constitution. *See Uhl v. Ness City*, 590 F.2d 839 (10th Cir.1979) (court avoids fourth, fifth and fourteenth amendment issues by addressing state preemption argument). In short, a state preemption claim does not rise to the level of a claim for violation of due process.

In *Claridge House One, Inc. v. Borough of Verona*, 490 F.Supp. 706 (D.N.J.), *aff'd without decision*, 633 F.2d 209 (3d Cir. 1980), the court determined that an ordinance placing a moratorium on conversion of apartments into condominiums was preempted by state law. The court explicitly raised the issue of its jurisdiction to hear a state preemption claim. Given that there were non-frivolous vagueness, equal protection, due process and contract clause claims, the court held that it could exercise jurisdiction over the state preemption claim pursuant to the doctrine of pendent jurisdiction. *Id.* at 709–10; *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). The *Claridge House* decision is noteworthy because the court did not exercise federal question jurisdiction over the state preemption claim.

■ This court concludes that it can and will maintain pendent jurisdiction over Counts 2 and 3. As a threshold matter, the court must consider whether plaintiffs have presented a nonfrivolous federal constitutional claim. *See Claridge House*, 490 F.Supp. at 708. The court concludes that they have. *See* discussion of merits, *infra* at 690–695. In addition, the plaintiffs' state and federal claims do derive from "a common nucleus of operative fact," in that they relate to the same Town Law. *Gibbs*, 383 U.S. at 725, 86 S.Ct. at 1138. As in *Claridge House*, "economy, efficiency and convenience all favor extending pendent jurisdiction" to the state law claims when one local law is challenged on the basis of state preemption and federal preemption. *See* 490 F.Supp. at 710. Therefore, the exercise of pendent jurisdiction is appropriate in the case at bar.

Count 6 alleges that the licensing fee of $500 called for in § 3(a) of Town Law 6 is excessive and improper. As authority for this claim, plaintiffs cite two state law decisions, *Torsoe Bros. Const. Corp. v. Board of Trustees*, 49 A.D.2d 461, 375 N.Y.S.2d 612 (2d Dept.1975), and *Bally's Aladdin's Castle, Inc. v. Town of Clarkstown*, 126 Misc.2d 543, 482 N.Y.S.2d 981 (Sup.Ct. 1984). These decisions do hold that "where a license or permit fee is imposed under the power to regulate, the amount charged cannot be greater than a sum reasonably necessary to cover the costs of issuance, inspection and enforcement." *See Torsoe Bros. Const. Corp.*, 49 A.D.2d at 465, 375 N.Y.S.2d at 616–617; *Bally's Aladdin's*

*Castle, Inc.,* 126 Misc.2d at 546, 482 N.Y.S.2d at 983. In these cases, however, there is no suggestion that an excessive fee claim rises to the level of a violation of a federal constitutional right. Consequently, the court will construe this claim as one based in state law and will exercise pendent jurisdiction over it.

Finally, with respect to Count 4, the parties should submit further briefing regarding the extent that the allegations in the count make out a claim under the due process clause of the Constitution. This issue may be important in conjunction with a possible award of attorneys' fees under 42 U.S.C. § 1988. If Count 4 states a claim under the constitution, the court exercises federal question jurisdiction over it. If the count is in fact a state law claim, the court, in the alternative, invokes its discretion to exercise pendent jurisdiction over the claim.

### B. Standing.

■ As previously stated, at oral argument defendant asserted that plaintiffs lack standing to challenge Town Law 6 until they have been cited for a violation. The doctrine of standing is both jurisdictional and prudential. *Matter of Appointment of Indep. Counsel,* 766 F.2d 70, 74 (2d Cir.), *cert. denied,* 474 U.S. 1020, 106 S.Ct. 569, 88 L.Ed.2d 554 (1985). To have standing, "at an irreducible minimum, Art. III requires the party who invokes the court's authority to 'show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant,' ... and that the

injury 'fairly can be traced to the challenged action' and 'is likely to be redressed by a favorable decision'...." *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982) (citations omitted).

Plaintiffs allege that Town Law 6 is preempted by both state and federal law. They also allege that failure to enjoin the enforcement of the Town Law will force them to cease their operations. Donnelly Affidavit, Document ("Doc.") 2, ¶ 14. This in a nutshell provides the court with the "irreducible minimum" needed for the court to adjudicate the matter. There is threatened injury: cessation of the airports' activities. Even if that injury were too speculative, the Town Law requires posting of a $2500 bond, outlays for insurance and payment for noise monitoring. Surely these injuries, which are also threatened, are the types of "palpable injuries" which plaintiffs have the right to challenge in court. *See Nash v. Bowen,* 869 F.2d 675, 677–78 (2d Cir.1989). The injuries stem from putatively illegal conduct, the adoption of Town Law 6. The Town Law is alleged to be illegal primarily on preemption grounds. The injuries can be fairly traced to the challenged action; that is, there is a direct link of causation between the Town Law and the threatened injuries. Finally, the injuries are likely to be addressed by the injunction which plaintiffs seek from this court. The court concludes that plaintiffs have standing to challenge Town Law 6.[12] *Cf. New York Air-*

---

12. While "Article III obligates a federal court to act only when it is assured of the power to do so," *Valley Forge Christian College,* 454 U.S. at 476 n. 13, 102 S.Ct. at 760 n. 13, "the federal judiciary has also adhered to a set of prudential principles that bear on the question of standing." *Id.* at 474, 102 S.Ct. at 759. Thus, a plaintiff before this court must generally assert his own legal rights and not those of another; the plaintiff's claim must also fall within "the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Id.* at 475, 102 S.Ct. at 760 (citation omitted); *see In re Application of Dow Jones & Co, Inc.,* 842 F.2d 603, 606 (2d Cir.1988). No doubt plaintiffs, as owners or operators of the airports regulated by the Town Law, are assert-

ing their own rights and not those of third parties. In addition, since plaintiffs assert that they will not be injured if the Town Law is stripped of the provisions which are preempted by state and federal law, their claim falls within the "zone of interest" protected by the supremacy clause and state preemption theory. *See ANR Pipeline v. Corporation Comm'n of the State of Oklahoma,* 860 F.2d 1571, 1579 (10th Cir.1988) (supremacy clause); *see also Citizens For An Orderly Energy Policy, Inc. v. Suffolk County,* 604 F.Supp. 1084, 1093 (E.D.N.Y.1985) ("The zone of interests test is, by its terms, a liberally applied standard."), *aff'd* 813 F.2d 570 (2d Cir.1987) (per curiam); *Sherman v. Frazier,* 84 A.D.2d 401, 405, 446 N.Y.S.2d 372, 376 (2d

*lines, Inc. v. Dukes County,* 623 F.Supp. 1435, 1443 (D.Mass.1985) (New York Air has standing to assert claims based on the supremacy clause and the commerce clause in seeking redress for refusal of airport commission to grant it landing rights).

C. Ripeness.

■ Although the defendant did not raise ripeness by name, the court construes the argument that plaintiffs may not challenge the Town Law until they are cited for a violation as also questioning whether plaintiffs' claims are ripe. The doctrines of standing and ripeness are closely related. As the Supreme Court has noted, "[t]he standing question ... bears close affinity to questions of ripeness—whether the harm asserted has matured sufficiently to warrant judicial intervention...." *Warth v. Seldin,* 422 U.S. 490, 499 n. 10, 95 S.Ct. 2197, 2205 n. 10, 45 L.Ed.2d 343 (1975) (citation omitted). Moreover, the court may *sua sponte* consider ripeness to the extent that it involves, at least in part, the existence of a live case or controversy. *Volvo North America Corp. v. Mens Int'l Professional Tennis Council,* 857 F.2d 55, 63 (2d Cir.1988).

■ Considerations of ripeness require a two-fold inquiry. The court must evaluate both the hardship to the parties of withholding judicial determination and whether the issues are fit for judicial determination. *Abbott Laboratories, Inc. v. Gardner,* 387 U.S. 136, 149, 87 S.Ct. 1507, 1515–16, 18 L.Ed.2d 681 (1967); *Seafarers Int'l Union of North America v. United States Coast Guard,* 736 F.2d 19, 26 (2d Cir.1984). Involved in the consideration of ripeness are factors of whether the action or inaction challenged is "final" and whether the issues presented for review are primarily legal as opposed to factual. *Id.* If the issues before the court are purely legal, then further factual development will not aid the court in making its determination

for "nothing would be gained by delaying decision, 'and the public interest would well be served by a prompt resolution of the constitutionality'" of the challenged legislation. *Long Island Lighting Co. v. Cuomo,* 666 F.Supp. 370, 394 (N.D.N.Y.1987) (quoting *Thomas v. Union Carbide Agricultural Products Co.,* 473 U.S. 568, 582, 105 S.Ct. 3325, 3333, 87 L.Ed.2d 409 (1985)).

■ The fitness inquiry "addresses essentially prudential concerns regarding the propriety of judicial intervention before a fuller factual record has been developed." *Id.* at 392. The court concludes that Counts 1 through 3 are fit for judicial review. They present the court with issues of preemption and do not need further factual development. In these counts the court must determine whether various portions of the Town Law were enacted in areas preempted by state or federal law. These are "predominantly legal" questions. *See Pacific Gas & Electric Co. v. Energy Resources and Conservation Comm'n,* 461 U.S. 190, 201, 103 S.Ct. 1713, 1720–21, 75 L.Ed.2d 752 (1983).

■ Count 4 alleges that in enacting § 3(i) the Town acted outside the authority given it by the state and that the Town failed to follow the procedural requirements of N.Y.Gen.Mun.Law § 239–m. To the extent that Count 4 presents the court with an allegation that the Town acted outside its authority, it is a "predominantly legal" question and fulfills the fitness prong of the ripeness test. Even to the extent that Count 4 alleges that the Town Board failed to follow the proper procedures in enacting Town Law 6 the court is presented with a "predominantly legal" question.

An additional hurdle to fitness has been invoked in "as applied" challenges to land use ordinances. The Supreme Court has required that a plaintiff obtain a "final decision" from the appropriate municipal

Dept.1982) (the home rule power granted to towns is constricted by the requirement that local laws enacted pursuant to the new statutes not be inconsistent with general law of the state; after 1976 amendment of the N.Y.Mun.Home Rule Law, towns may, with a few exceptions,

supersede N.Y.Town Law); *cf. Pesticide Public Policy Found. v. Village of Wauconda,* 622 F.Supp. 423 (N.D.Ill.1985) (reaching merits of claim alleging state preemption of village pesticide ordinance), *aff'd without decision,* 826 F.2d 1068 (7th Cir.1987).

body prior to bringing an "as applied" challenge to permitted land use. *MacDonald, Sommer & Frates v. Yolo County,* 477 U.S. 340, 106 S.Ct. 2561, 91 L.Ed.2d 285 (1986); *Williamson Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985). While the final decision requirement arose in the context of either takings clause claims or claims that regulations "go to far," *see, e.g., Williamson,* 473 U.S. at 186, 105 S.Ct. 3116, this same requirement has been extended to "as applied" challenges to land use ordinances where the challenges are based upon procedural due process arguments. *Unity Ventures v. Lake County,* 841 F.2d 770 (7th Cir.), *cert. denied,* — U.S. ——, 109 S.Ct. 226, 102 L.Ed.2d 216 (1988); *Herrington v. County of Sonoma,* 834 F.2d 1488 (9th Cir.1987), *modified,* 857 F.2d 567 (9th Cir.1988).

It would appear by plaintiffs' own argument that, because the Town Board has erroneously failed to refer § 3(i) to the Ulster County Planning Agency as required by N.Y.Gen.Mun.Law § 239–m, § 3(i) is not a "final decision." Consequently, if plaintiffs were making an "as applied" challenge to § 3(i), it would not be ripe for decision. However, plaintiffs in the case at bar, though not in so many words, attack § 3(i) on its face. That is, they contend that the section is "unconstitutional in every conceivable application," *City Council v. Taxpayers for Vincent,* 466 U.S. 789, 796, 104 S.Ct. 2118, 2124, 80 L.Ed.2d 772 (1984), because the Town Board has failed to comply with N.Y.Gen. Mun.Law § 239–m. Accordingly, the court concludes that Count 4 meets the fitness prong of the ripeness test, given the purely legal nature of this facial challenge. *See Long Island Lighting Co.,* 666 F.Supp. at 394; *cf. Pacific Gas & Electric,* 461 U.S. at 201, 103 S.Ct. at 1720–21.

▉ Count 5 of the complaint challenges Town Law 6 as violative of the takings clause of the federal constitution. Previously this court has noted that "[u]ntil an actual taking has occurred, an action under the takings clause does not lie." *Long Island Lighting Co. v. Cuomo,* 666 F.Supp.

at 395. In order to demonstrate an actual taking, plaintiffs' counsel argues by way of affidavit that:

36. ... a blanket prohibition [on trailers and tents] constitutes an unconstitutional taking....

40. ... section 3(c) dealing with water supply is confiscatory in that it requires compliance with Ulster County Health Department standards as to adequacy and purity of water, but I have been advised by a representative of that department that such standards do not apply to Blue Sky Ranch.

41. The same must be said of section 3(d). Section 3(d) requires compliance with Ulster County Department of Health requirements relating to sanitation. I have been advised by the same representative that such standards do not apply to Blue Sky Ranch.

42. Section 3(h) requires that plaintiff Blue Sky Entertainment, Inc. procure "comprehensive policies of public liability insurance" for liability incident to parachute jumping with coverage of $2,000,-000.00/$5,000,000.00. Such coverage is simply unavailable to parachute jumping centers....

44. Section 6(a) requires that aircraft, at all times while descending or ascending, remain within the "imaginary surface parameters [sic.]" of the parachute jumping center or small airport, as those perimeters are defined by 14 C.F.R. § 77.25. Compliance with section 6(a) would require jump aircraft to turn virtually constantly during ascent. Such maneuvering would substantially delay arrival at altitude (after 12,500 feet). Such maneuvering also can impede seriously the pilot's ability to maintain a look-out for other aircraft. The economic and safety degradation imposed by this section renders compliance unfeasible....

45. The foregoing are examples of the confiscatory nature of certain portions of Gardiner Town Law 6.

Donnelly Affidavit, Doc. 2. Much of Count 5 as styled in the Donnelly affidavit is an "as applied" challenge. Plaintiffs in presenting an "as applied" challenge under

the takings clause certainly face a tough row to hoe. In order to bring such a claim, plaintiffs must present the court with a "final decision" regarding the application of Town Law 6. *Williamson*, 473 U.S. at 173, 105 S.Ct. at 3110; *Yolo County*, 477 U.S. at 349, 106 S.Ct. at 2566. However, plaintiffs' own arguments indicate that no final decision has been made with respect to several of their examples of confiscation. First, the court will address the example posed by counsel, as quoted above, that he has been advised that the water and sanitation provisions of the County Health Code will not be applied to one of the airports, Blue Sky Ranch. In and of itself, that argument implies that no final decision has been made to apply the County Health Code to Blue Sky Ranch and future negotiations with regard to the application of the Health Code to Blue Sky Ranch would not be "futile." *See Yolo County*, 477 U.S. at 352–53 n. 8, 106 S.Ct. at 2568 n. 8.

Insofar as plaintiffs attack § 3(h), requiring liability insurance in levels up to two or five million dollars, as confiscatory because the insurance required is unobtainable, defendant brings to the court's attention that the Town Board is willing, upon a showing that the insurance required is unobtainable, to alter the levels of insurance required. The Town points to the terms of § 3(h) under which the Town Board may adjust the limits of liability to what it "may deem acceptable." In order for this provision to be ripe under a takings clause cause of action, plaintiffs would have to have sought a final decision from the Town Board regarding the level to which the required limits of liability insurance could or would be adjusted, if at all.

Plaintiffs also challenge as confiscatory § 6(a), requiring ascending aircraft to climb within the perimeters of the airport. However, at oral argument counsel for the plaintiff all but conceded that this section of the Town Law was preempted by federal aviation law. Given the later holding of the court that TL6 § 6 is preempted, *see infra* at 694, plaintiffs will not be able to prevail on a takings clause argument concerning § 6(a) because that part of the takings claim will be moot.

Finally, plaintiffs complain that § 3(i), prohibiting overnight camping at the airports, is an example of the manner in which Town Law 6 is confiscatory. Yet, as discussed previously, plaintiffs also allege that the Town Board cannot enforce § 3(i) because the provision has not been referred to the Ulster County Planning Board. Therefore, there has been no "final decision" with regard to § 3(i). While it may be acceptable to pursue a facial due process challenge to § 3(i), the court finds it difficult to envision a takings clause challenge to § 3(i) which would not be an "as applied" challenge. To make out a takings clause challenge, each plaintiff would have to demonstrate that he was deprived of all beneficial use of his respective property rights. *Yolo County*, 477 U.S. at 351, 106 S.Ct. at 2567 (citing *San Diego Gas & Electric Co. v. San Diego*, 450 U.S. 621, 631–32 & n. 12, 101 S.Ct. 1287, 1293–94 n. 12, 67 L.Ed.2d 551 (1981)). The beneficial use to which a property could be put depends on the parcel of real estate itself. Therefore the court concludes that plaintiffs cannot challenge a prohibition against tents and trailers under the takings clause without specific reference to the parcels which are claimed to be taken. As a result, the court construes the part of Count 5 which challenges TL6 § 3(i) as an "as applied" challenge. Without a "final decision" regarding § 3(i), a claim that § 3(i) constitutes a taking is not fit for decision.

Given the contingencies which render unfit the takings clause challenges regarding §§ 3(c), 3(d), 3(h) and 3(i) and given further that the takings clause challenges regarding § 6(a) will be rendered moot by this court's decision on the merits, the court concludes that on the whole, the takings clause question is not fit for judicial review. Accordingly, Count 5 of the complaint is dismissed because it is not ripe for decision. *See Long Island Lighting Co.*, 666 F.Supp. at 397 (*dismissing* claims because they were not ripe for decision).

Count 6 of the complaint alleges that the license fee of $500 as required by § 3(a) of Town Law 6 is excessive and improper. Defendant has failed to submit an argu-

ment in support of the fee requirement. The court requests further briefing from the parties on the issue of whether Count 6 is fit for the court's determination. In any event, given this court's decision on the merits, as discussed below, the Town may choose to reevaluate the amount of the license fee.

■ Finally, Count 7 alleges a cause of action under 42 U.S.C. § 1983. To the extent which the federal questions raised under Counts 1 and 4 are cognizable under § 1983 the portion of Count 7 which relates to those counts is fit for judicial review. To the extent that Count 7 incorporates Count 5 it is not fit for judicial review.

Having completed the "fitness" inquiry, the court must evaluate the "hardship" to the parties of withholding judicial determination. Under this line of inquiry, plaintiffs must demonstrate to the court "a 'realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement,' ... but need not 'await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending that is enough.'" *Long Island Lighting Co.*, 666 F.Supp. at 392 (quoting *Babbit v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298, 99 S.Ct. 2301, 2308, 60 L.Ed.2d 895 (1979) and *Pennsylvania v. West Virginia*, 262 U.S. 553, 593, 43 S.Ct. 658, 663, 67 L.Ed. 1117 (1923)). Withholding consideration of plaintiffs' claims which are fit for determination could subject plaintiffs' to a "direct injury." Town Law 6 regulates much of plaintiffs' operations and, if it were enforced as a whole, it would cause them to, *inter alia*, post a $2500 bond, pay a license fee, and would restrict flight patterns of planes using the airports and any parachute jumping. The court concludes that the hardship inquiry favors plaintiffs.[13]

To summarize the holdings regarding ripeness, the court concludes that Counts 1, 2, 3, 4, and part of 7 are ripe for judicial determination. Count 5, the takings clause

claim, is not ripe for decision. Count 6, alleging an excessive fee will require further briefing and therefore the court will not rule at this time on whether Count 6 is ripe for decision. Having addressed issues of jurisdiction, the court now considers the merits of plaintiffs' claims contained in Counts 1, 2, 3, 4 and 7.

## II. The Merits.

In the present action plaintiffs seek declaratory relief and a permanent injunction. To gain permanent injunctive relief the plaintiffs must actually succeed on the merits. *Ciba–Geigy Corp. v. Bolar Pharmaceutical Co., Inc.*, 747 F.2d 844, 850 (3d Cir.1984), *cert. denied*, 471 U.S. 1137, 105 S.Ct. 2678, 86 L.Ed.2d 696 (1985). As a general rule, this court will issue a permanent injunction when there is no adequate remedy at law and when the balance of the equities favors the party seeking relief. *See Buckingham Corp. v. Karp.*, 762 F.2d 257, 269 (2d Cir.1985) (irreparable harm is not an independent requirement for a issuing a permanent injunction); *compare United States v. County of Westchester*, 571 F.Supp. 786, 798 (S.D.N.Y.1983) (listing irreparable harm as an independent requirement for a permanent injunction).

### A. Federal Preemption.

Count 1, as outlined previously, alleges that a large portion of Town Law 6 is preempted by federal law and is therefore invalid under the supremacy clause. Preemption occurs in several forms, all of which are based on a consideration of congressional intent. *See generally Northwest Central Pipeline Corp. v. State Corp. Comm'n of Kansas*, —— U.S. ——, ——, 109 S.Ct. 1262, 1272–1273, 103 L.Ed. 2d 509 (1989); *New York State Pesticide Coalition, Inc. v. Jorling*, 704 F.Supp. 26, 27 (N.D.N.Y.1989). First, Congress may "expressly declare that the authority conferred by it shall be singularly federal." *United*

---

13. "In considering the hardship to the parties of withholding consideration, a court must be mindful that 'one does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending, that is enough.'" *Volvo North America Corp. v. Men's Int'l Professional Tennis Council*, 857 F.2d 55, 63 (2d Cir.1988) (quoting *Regional Rail Reorganization Act Cases*, 419 U.S. 102, 143, 95 S.Ct. 335, 358, 42 L.Ed.2d 320 (1974)).

*States v. State of New York,* 552 F.Supp. 255, 263 (N.D.N.Y.1982); *see Northwest Central Pipeline,* —— U.S. at ——, 109 S.Ct. at 1272–1273. Additionally, "preemptive intent may be inferred when Congress legislates comprehensively, thus occupying an entire field of regulation." *Scurlock v. City of Lynn Haven,* 858 F.2d 1521, 1523 (11th Cir.1988); *see Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947). Lastly, "if Congress has not displaced state regulation entirely, it may nonetheless pre-empt state law to the extent that the state law actually conflicts with federal law." *Michigan Canners & Freezers v. Agricultural Bd.,* 467 U.S. 461, 469, 104 S.Ct. 2518, 2523, 81 L.Ed.2d 399 (1984); *see Rice,* 331 U.S. at 230, 67 S.Ct. at 1152. In the present action plaintiffs appear to contend that the second and third types of preemption are involved, namely that Congress has legislated comprehensively in the area of air navigation and also that some of Town Law 6 directly conflicts with FAA regulations.

Plaintiffs' arguments stem from the wording and interpretation, both regulatory and judicial, of 49 U.S.C.App. §§ 1348(c) and 1508(a). Under the former, "[t]he Secretary of Transportation is ... authorized and directed to prescribe air traffic rules and regulations governing the flight of aircraft, for the navigation, protection, and identification of aircraft, for the protection of persons and property on the ground, and for the efficient utilization of navigable airspace...." 49 U.S.C.App. § 1348(c). Pursuant to the latter section, "[t]he United States of America is declared to possess and exercise complete and exclusive national sovereignty in the airspace of the United States...." 49 U.S.C.App. § 1508(a).

■ The preeminent authority on the question of federal preemption in the area of aviation is the Supreme Court's decision in *City of Burbank v. Lockheed Air Terminal,* 411 U.S. 624, 93 S.Ct. 1854, 36 L.Ed.2d 547 (1973). In that case the City of Burbank had adopted an ordinance which set a curfew of 11 p.m. until 7 a.m. during which jet aircraft could not take off from the Hollywood–Burbank Airport. The Court held that the curfew ordinance was unconstitutional because it was preempted by federal law, specifically, 49 U.S.C.App. §§ 1348(a) and (c), and 1508(a), as well as the Noise Control Act of 1972, 86 Stat. 1234. Under the Court's reasoning, the balancing and interdependence of safety, efficiency and protection of persons on the ground "requires a uniform and exclusive system of federal regulation if the congressional objectives underlying the Federal Aviation Act are to be fulfilled." [14] *Id.* at 639, 93 S.Ct. at 1862.

Defendant attempts to diffuse the proposition that large portions of Town Law 6 are preempted by federal law. To this end it relies heavily on a recent Seventh Circuit case, *Bieneman v. City of Chicago,* 864 F.2d 463 (7th Cir.1988). In *Bieneman* the court adjudicated an appeal from a landowner whose action regarding noise from O'Hare Airport had been dismissed at the district court level. The portion of *Bieneman* on which defendant places great emphasis is that which holds that federal preemption in the realm of regulating aircraft and aviation does not foreclose a plaintiff from bringing a state law nuisance action against the proprietor or users of an airport. *Id.* at 470–73.

---

**14.** Under *Burbank* an ordinance enacted to control noise takes on a different posture depending on whether the ordinance was enacted pursuant to the municipality's police power or pursuant to the municipality's position as a proprietor of the airport. 411 U.S. at 635–36 n. 14, 93 S.Ct. at 1861 n. 14; *Pirolo v. City of Clearwater,* 711 F.2d 1006, 1008–09 (11th Cir.1983); *San Diego Unified Port Dist. v. Gianturco,* 651 F.2d 1306, 1316–19 (9th Cir.1981), *cert. denied,* 455 U.S. 1000, 102 S.Ct. 1631, 71 L.Ed.2d 866 (1982); *British Airways v. Port Auth. of New York,* 564 F.2d 1002 (2d Cir.1977). Acting as a proprietor, a municipality has more leeway when combatting noise at an airport then when it is acting pursuant to its police powers. *San Diego Unified Port Dist.,* 651 F.2d at 1316; *British Airways,* 564 F.2d at 1010–11. However, the Town of Gardiner is not the proprietor of the airports which are subject to Town Law 6. Therefore, the Town is not entitled to any special leeway beyond what it may do under its police powers.

The court in *Bieneman* did not articulate a radical rethinking of the doctrine of federal preemption in the area of aviation regulation. Instead, it merely underscored one of the boundaries of federal aviation law outside of which state law remained intact. On the one hand, the court held that federal preemption impacts the area of municipal police power regulation to the extent of precluding municipal regulation in an area where the federal law is pervasive. The court concluded on the other hand that federal preemption does not preclude courts from hearing a state law action for damages. The Seventh Circuit alluded to this distinction in the following passage: *"Burbank* dealt with regulation: the city enacted a substantive rule. Bieneman wants damages, not regulation." *Id.* at 472. While the court observed that "[p]erhaps this is a distinction without a difference," *id.,* it maintained the distinction, nonetheless, and bolstered it with an explanation. "A court could not award damages against O'Hare or its users for conduct required by [federal] regulations, or for not engaging in noise abatement procedures that the Federal Aviation Administration considered but rejected as unsafe." *Id.* In short, "a state may not use common law procedures to question federal decisions or extract money from those who abide by them." *Id.* Consequently, contrary to defendant's argument, the bottom line remains, in an area where federal law preempts state law "a state is forbidden to alter the substantive rule." [15] *Id.* at 472.

■ Defendant also attacks the propriety of federal preemption in this instance because it claims the airports regulated by Town Law 6 are purely local. Even if the airports are local in character, federal preemption of Town Law 6 is not ruled out. As noted above, pursuant to 49

U.S.C.App. § 1348(c) the Secretary of Transportation ("the Secretary") is "authorized and directed to prescribe air traffic regulations ... for the efficient utilization of navigable airspace." The "navigable airspace" over which the Secretary is directed to prescribe regulations extends above and below the 1000 foot mark. *Allegheny Airlines v. Village of Cedarhurst,* 238 F.2d 812, 815 (2d Cir.1956) ("The federal regulatory system, if valid, has preempted the field below as well as above 1000 feet from the ground."). In fact, federal law in the area of aviation is so pervasive that it preempts a municipal ordinance which attempts to govern the flight paths of aircraft using an airport which has no control tower, is not served by a certified carrier and has no regularly scheduled flights. *United States v. City of Blue Ash,* 487 F.Supp. 135 (S.D.Ohio 1978), *aff'd mem.,* 621 F.2d 227 (6th Cir.1980); *compare Faux–Burhans v. County Comm'rs of Frederick County,* 674 F.Supp. 1172 (D.Md.1987) (zoning ordinance may regulate the number of aircraft, the take-off distance, set-back requirements at a private airport, as well as prohibit instructional flights). On the authority of the *Blue Ash* and *Cedarhurst* cases, the court concludes that even if the airports governed by Town Law 6 are local in character the court is not precluded from applying the doctrine of federal preemption when reviewing Town Law 6.

■ Having discussed the general arguments regarding preemption, the court will now address the specific sections of Town Law 6 challenged in Count 1. Plaintiffs challenge all of § 2. Section 2 is entitled "General Provisions". Subsection (a) states the license requirement for airports covered by Town Law 6. Subsections (b) and (c) forbid both the operation of the

---

**15.** Defendant also relies on *Parachutes Inc. v. Township of Lakewood,* 121 N.J.Super. 48, 296 A.2d 71 (1972) (per curiam). In *Parachutes, Inc.* the court upheld a local ordinance governing a local airport which forbade aircraft noise exceeding 50 decibels during the night and 60 decibels during the day. The court concluded that a municipality "may regulate the noise from airplanes hovering and cruising at low levels for sport parachuting." 121 N.J.Super. at

50, 296 A.2d at 72. It was not convinced that there was federal preemption of the ordinance. The court included a "but see" cite to the court of appeals decision which the Supreme Court affirmed in *Burbank.* Since *Parachutes, Inc.* was decided prior to the *Burbank* decision in the Supreme Court, this court is hesitant to view *Parachutes, Inc.* as persuasive. Of course, the *Parachutes, Inc.* decision is not binding authority on this court.

airports and parachute jumping unless the airports have complied with federal, state and county rules and regulations. Finally, subsection (d) prohibits the operation of any airport covered by the Town Law unless the airport operator has obtained a license from the Town and complied with federal regulations.

 The court concludes that all of section 2 is not preempted by federal law. Plaintiffs have not demonstrated to the court how a mere requirement of a license in TL6 § 2(a) is preempted by federal law. Therefore, the court holds that TL6 § 2(a) is not preempted by federal law. To the extent, however, that the Town places itself in a position of enforcing federal regulations, the court holds that §§ 2(b), (c) and (d) are preempted. Not preempted under the theory of Count 1 is the effort of the Town to put itself in a position to hold the airports in violation of the ordinance if the airports do not follow state or county law.

With regard to section 3, just as with the mere license requirement, plaintiff has not demonstrated to the court how the requirement of a license fee in and of itself is preempted by federal law. There may be, as Count 6 implies, legitimate bounds for a fee. It follows, then, that § 3(a) is not preempted by federal law.

 Count 1 also challenges §§ 3(b)(i) and 3(b)(iii). These provisions relate to the application which an airport must complete in order to obtain a license. Section 3(b)(i) requires a license applicant to indicate "[t]he proposed arrangement and size of the target and drop zone for a parachute jumping center." Although the federal regulations of parachute jumping do not require an application or identification of a drop zone, they do govern "parachute jumps made in the United States except parachute jumps necessary because of an inflight emergency." 14 C.F.R. § 105.1. Even though Town Law 6 may not conflict with 14 C.F.R. Part 105, the FAA's own view of the breadth of its authority as evidenced in 14 C.F.R. § 105.1 indicates that the FAA views its authority as pervasive in the realm of parachute jumping.

Even though TL6 § 3(b)(i) and the FAA regulations do not conflict in this instance, that does not indicate that the Town has authority to regulate parachute jumping. *See Blue Ash,* 487 F.Supp. at 137. Defendant has not challenged the FAA's interpretation of its broad authority to regulate parachute jumping. The court defers to the agency's interpretation of its authority and concludes that federal law has preempted the regulation of parachute jumping. *See Chemical Mfrs. Ass'n v. Natural Resources Defense Council,* 470 U.S. 116, 125, 105 S.Ct. 1102, 1107, 84 L.Ed.2d 90 (1985) (the "view of an agency charged with administering the statute is entitled to considerable deference"). Since the Town may not regulate parachute jumping, the court sees no legitimate reason why it may inquire into potential parachute jump sites. The court concludes that § 3(b)(i) is preempted by federal law and is, as a result, void.

 Section 3(b)(iii) requires the applicant to provide a "description of each plane that will be utilized by the parachute jumping center for parachuting or any other purpose or operated at the small airport...." Federal law addresses the registration of aircraft. 49 U.S.C.App. § 1401, as implemented in 14 C.F.R. Part 47, requires the registration of aircraft owned by, among others, citizens of the United States or "corporations ... lawfully organized and doing business under the laws or any State thereof so long as such aircraft is based and primarily used in the United States." 49 U.S.C.App. § 1401(b); 14 C.F.R. § 47.3. Federal law preempts TL6 § 3(b)(iii). *Cf. Bank of Lexington v. Jack Adams Aircraft Sales, Inc.,* 570 F.2d 1220, 1224 (5th Cir.1978) (Congress has preempted state law with regard to registration and recording of title instruments of commercial aircraft). That subsection is therefore void.

 That part of TL6 § 3(h) which is challenged in Count 1 relates to insurance requirements for parachute jumping and aircraft flights. In apparent reference to this provision of the Town Law plaintiffs bring to the court's attention Part 205 of 14

C.F.R. which is entitled "Aircraft Accident Liability Insurance." Part 205, though, only applies to direct carriers and commuter air carriers, 14 C.F.R. § 205.2, and is consequently not applicable to the situation at bar. *See also* 14 C.F.R. § 298.41 *et seq.* (regarding liability insurance for air taxi operators). Nonetheless, the court concludes that the portion of TL6 § 3(h) which is challenged in Count 1 is void under the doctrine of pervasive federal regulation. *See Burbank,* 411 U.S. at 633 and 639–40, 93 S.Ct. at 1859 and 639–40; *see also Michigan Canners,* 467 U.S. at 469, 104 S.Ct. at 2523. Even though the plaintiffs have not identified any portion of 14 C.F.R. which covers, even in broad terms, requirements of insurance liability for operations of aircraft which are not direct carriers, commuters or air taxis, the court is of the opinion that the enforcement of a requirement of liability insurance for parachute jumping and aircraft operations would impact upon Parts 105 (parachute jumping), on Parts 23, 25, 27, 29, 31, 33 and 35 (airworthiness standards), on the general notion that the United States, not the individual States, exercise sovereignty over federal airspace, 49 U.S.C.App. § 1508(a), and would intrude on the Secretary's mandate to prescribe rules and regulations for the efficient utilization of navigable airspace. 49 U.S.C.App. § 1348(c); *see Burbank,* 411 U.S. at 639–40, 93 S.Ct. at 1862–63; *Blue Ash,* 487 F.Supp. at 136–37. The portion of § 3(h) as challenged in Count 1 is void under the supremacy clause of the United States Constitution.

■ Sections 4 and 5 of Town Law 6 are also challenged in Count 1. These two sections relate to parachute jumping. They, among other things, require the keeping of logbooks for jumps, forbid jumping if it would create a hazard, require that jumps only be made at jumping centers, require compliance with federal and state law and prohibit nighttime jumping. These two sections are void both on account of conflict between Town Law 6 and the federal regulations and because of the pervasiveness of federal law in the area of parachute jumping. As a specific example of conflict, the provision which prohibits nighttime jumping directly contradicts 14 C.F.R. § 105.33 which permits nighttime jumping if the jumper "is equipped with a means of producing a light visible for at least 3 statute miles." More generally, as noted previously, 14 C.F.R. Part 105 covers, with the exception of emergency jumps, all parachute jumps made in the United States. There is little doubt of the pervasive nature of Part 105 and if the court were to permit the Town to legislate in this area it would impermissibly "diffuse the powers given by Congress to FAA." *Burbank,* 411 U.S. at 640, 93 S.Ct. at 1863.

■ Section 6 of Town Law 6 prohibits low-flying aircraft by requiring aircraft entering and leaving the airports to climb or descend within the perimeters of the airports. The court has already noted that counsel for the defendant acknowledged at oral argument that this section is probably preempted because it affects aircraft flight patterns. Additionally, the court notes that the Supreme Court in *Burbank* quoted from—and apparently endorsed the view contained in—a letter written to Congress by the Secretary of Transportation regarding amendments to the Federal Aviation Act. The letter stated, "State and local governments will remain unable to use their police powers to control aircraft noise by regulating the flight of aircraft." 411 U.S. at 635, 93 S.Ct. at 1860. Many courts have followed the lead of the *Burbank* Court and held that states or municipalities may not pursuant to their police powers attempt to regulate noise by altering flight patterns. *See, e.g., Pirolo v. City of Clearwater,* 711 F.2d 1006 (11th Cir.1983); *Faux–Burhans,* 674 F.Supp. at 1174; *United States v. City of Blue Ash,* 487 F.Supp. 135 (S.D.Ohio 1978), *aff'd mem.* 621 F.2d 227 (6th Cir.1980); *see also American Airlines, Inc. v. Town of Hempstead,* 398 F.2d 369 (2d Cir.1968); *cf. City of South Lake Tahoe v. Tahoe Regional Planning Agency,* 664 F.Supp. 1375, 1376 (E.D.Cal.1987) ("Congress [has been] generally desirous of an open sky policy"). The court concludes that TL6 § 6 is void because it is preempted by federal law.

■ A major thrust of Town Law 6 is an attempt to regulate the noise generated by aircraft taking-off and landing at the airports. As explained previously, section 7 of the Town Law sets forth an extensive mechanism for monitoring and enforcing noise limits. Much of the litigation involving the question of federal preemption of state law regulating aviation has centered around attempts to diminish noise of aircraft using airports. With the exception of reasonable proprietary regulations,[16] *see Air Transport Ass'n v. Crotti*, 389 F.Supp. 58 (N.D.Cal.1975), the courts have uniformly struck down attempts by local governments to regulate the noise of aircraft. *See, e.g., City of Burbank*, 411 U.S. 624, 93 S.Ct. 1854; *Pirolo*, 711 F.2d 1006; *San Diego Unified Port Dist. v. Gianturco*, 651 F.2d 1306; *American Airlines*, 398 F.2d 369; *Allegheny Airlines*, 238 F.2d 812; *United States v. State of New York*, 552 F.Supp. 255; *Blue Ash*, 487 F.Supp. 135; *see also Bieneman*, 864 F.2d at 472 ("Federal law governs much of the conduct of O'Hare and its carriers. See 14 C.F.R. Part 36 (noise characteristics of aircraft), Part 150 (noise abatement procedures at airports)."). Given the uniform backdrop of authority and further given the noise regulations contained in Parts 36 and 150 of 14 C.F.R. the court concludes that TL6 § 7 is void because it is preempted by federal law.

■ Plaintiffs also contend that sections 8 and 9 of Town Law 6 are preempted by federal law. These two sections provide for penalties, or revocation or suspension of license in event of a violation of the Town Law 6. Plaintiffs do not, though, contend that all of the substantive portions of the Town Law are preempted by federal law. It is therefore entirely possible that an airport could violate one of the sections not preempted by federal law and be liable under sections 8 and 9. As a result, the court will not hold that these two sections are preempted by federal law.

**B. State Preemption.**

In Count 2 plaintiffs allege that the portion of TL6 § 3(h) which mandates liability insurance for automobiles is preempted by state law. On the one hand, the defendant has not responded to this challenge beyond stating that Town Law 6 is authorized by the Municipal Home Rule Law and New York Town Law § 130(22). A review of N.Y. Town Law § 130(22) does not reveal any authority for the Town to require special automobile insurance from aircraft pilots, aircraft passengers and parachutists. Nor is such authority readily apparent from the Municipal Home Rule Law. On the other hand, plaintiffs have not provided the court with any case law directly on point which holds that a municipality cannot enact laws governing the amount of liability insurance for automobiles. Until the court receives further briefing on the matter it will not rule on Count 2.

■ Plaintiffs allege in Count 3 that TL6 § 3(j) is preempted by state law. This provision of the Town Law provides that "[t]he possession, sale, use or consumption of alcoholic and other intoxicating beverages and all controlled substances are strictly prohibited at any small airport or parachute jumping center." In challenging § 3(j) plaintiffs have referred the court to a New York State Court of Appeals decision, *People v. DeJesus*, 54 N.Y.2d 465, 446 N.Y. S.2d 207, 430 N.E.2d 1260 (1981). In *DeJesus* the court held that New York State has preempted the field of regulation of establishments which sell alcohol and that no local government may legislate in the field. *See* New York State Alcoholic Beverage Control Law § 1 et seq. On the basis of the *DeJesus* decision this court holds that TL6 § 3(j) is preempted and void to the extent it prohibits the sale of alcoholic beverages.

As observed in the discussion of the issue of automobile insurance, defendant has not provided this court with any more explanation of its authority to promulgate TL6 § 3(j) than reference to New York Town Law § 130(22) and the Municipal

---

**16.** "[T]he rationale for the proprietor exemption to imposing curfews is to enable a proprietor to protect himself from liability for excess aircraft noise." *United States v. State of New York*, 552 F.Supp. at 264.

Home Rule Law. Again, it is not apparent from the face of either of these that the Town does possess the power to control the use, consumption or possession of alcohol or controlled substances or the sale of controlled substances at the airports. Nonetheless, plaintiffs do not bring to the court's attention any case law or other authority which holds that a municipality may not so regulate. As with the automobile insurance matter, the court will not rule on the validity of the portion of TL6 § 3(j) which prohibits the use, consumption or possession of alcohol or the portion of § 3(j) which relates to controlled substances until the parties have briefed this issue further.

#### C. Prohibition of Tents and Trailers.

In Count 4 plaintiffs challenge TL6 § 3(i) which prohibits the airports from permitting trailers to be parked or tents to be erected on the premises. Plaintiffs launch a two prong attack on this subsection of the Town Law. First, they allege that the town does not have the authority to prohibit tents and trailers. Second, they contend that § 3(i) is a zoning law which must be referred to the Ulster County Planning Agency. They further contend that § 3(i) has not been referred to the Planning Agency.

Defendant's response to this count is unspecific. Once again the court assumes that defendant's general reference to New York Town Law § 130(22) and the Municipal Home Rule Law is an answer to plaintiff's challenge regarding the Town's authority to promulgate § 3(i). While N.Y. Town Law § 130(22) does permit the Town to regulate the "parking or accommodation of automobiles or other vehicles," the court is at this time unwilling to decide on the basis of that language alone that § 130(22) gives the Town authority for § 3(i). If the Town is arguing that its authority for § 3(i) stems from the Municipal Home Rule Law, the court is of the opinion that the argu-

ment—to deserve some consideration—must contain more than a mere cite to the Home Rule Law. Thus, in order to decide this prong of Count 4 the court directs the parties to further brief the issue.

With regard to the second prong of the challenge against § 3(i), defendant in its papers claims that § 3(i) is a general law provision, while at oral argument defense counsel argued that Town Law 6 is a zoning provision. In order to resolve this prong of Count 4, the court needs more assistance from the parties. Specifically, the parties should, beyond making conclusory statements, brief the matter as to whether or not § 3(i) is a zoning provision.

#### D. 42 U.S.C. § 1983.

■ Count 7 alleges that plaintiffs' constitutional rights have been violated and therefore that they have a claim under 42 U.S.C. § 1983. Defendant does not attack Count 7 with any arguments beyond those addressed to the previous counts. The court, however, in its independent research has determined that a claim under the supremacy clause is not cognizable under § 1983. *J & J Anderson, Inc. v. Town of Erie,* 767 F.2d 1469, 1476–77 (10th Cir. 1985); *Pirolo v. City of Clearwater,* 711 F.2d 1006 (11th Cir.1983); *Pesticide Public Policy Found.,* 622 F.Supp. at 435–36; *see Western Air Lines v. Port Auth. of New York and New Jersey,* 817 F.2d 222, 226 (2d Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 1467, 99 L.Ed.2d 697 (1988). Therefore, the plaintiffs may not recover attorneys' fees with respect to prevailing on Count 1. They may still be entitled to attorneys' fees if Count 4, or a portion of Count 4, states a claim under the due process clause and if they prevail on such a due process claim.[17]

#### E. Severability.

In addition to the other issues on which the parties are to brief the court, the parties should brief the issue of severability.[18]

---

**17.** Plaintiffs would also have to demonstrate that, to the extent that they prevailed on a due process claim in Count 4, they had succeeded on a "significant issue." *Texas Teachers Ass'n v.*

*Garland Indep. School Dist.,* —— U.S. ——, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989).

**18.** Severability of a state statute is a question of state law. *Exxon Corp. v. Eagerton,* 462 U.S.

That is, they should address whether all of Town Law 6 is void because portions of it are void. Within the discussion of severability, the parties should address the effect of the severability clause in Town Law 6, TL6 § 10(b).

## CONCLUSION

■ In conclusion, the court shall issue a permanent injunction to the extent that plaintiffs have prevailed in Count 1. The court holds that plaintiffs have no adequate remedy at law and that the balance of the equities favors granting an injunction to plaintiffs. *See generally Lockheed Air Terminal, Inc. v. City of Burbank*, 318 F.Supp. 914 (C.D.Cal.1970) (enjoining enforcement of Burbank ordinance, though no standard regarding issuance of a permanent injunction is mentioned), *aff'd*, 457 F.2d 667 (9th Cir.1972), *aff'd*, 411 U.S. 624, 93 S.Ct. 1854, 36 L.Ed.2d 547 (1973). Plaintiffs have no adequate remedy at law because the injury caused by the unconstitutional Town Law is continuing and in order to obtain monetary damages plaintiffs "would be required to pursue damages each time [they were] injured." C. Wright & A. Miller, *Federal Practice and Procedure: Civil* § 2944, at 398 (1973). For instance, in seeking monetary damages the plaintiffs who own and operate Blue Sky Ranch would be forced to sue after each parachute season (or if they chose, after several seasons, etc.). Legal remedies are also inadequate because monetary damages would be difficult to measure in any related action for loss to business reputation and for loss of business revenues. *See id.* The balance of the equities favors plaintiffs for without the injunctive relief the existence of plaintiffs' businesses are threatened; with injunctive relief the relationship between the parties is near what it was prior to the enactment of Town Law 6.

Finally, the court does not believe it is inequitable to enjoin defendant from enforcing unconstitutional portions of a legislative enactment. *See County of Westchester*, 571 F.Supp. at 798.

Consequently, the court permanently enjoins the Town from enforcing the following portions of Town Law 6: § 2—to the extent the Town seeks to enforce federal regulations, § 3(b)(i), § 3(b)(iii), § 3(h)—to the extent § 3(h) requires insurance for parachute jumping and aircraft flights, § 3(j)—to the extent it prohibits the sale of alcoholic beverages, § 4, § 5, § 6, and finally § 7.

In addition, the court dismisses Count 5 as not ripe for decision.

■ The court directs both parties to further brief the following issues:

1) the extent, if any, to which Count 4 makes out a federal question, and the extent to which Count 4 is cognizable under 42 U.S.C. § 1983;

2) whether Count 6 is ripe and then, presuming it is ripe, a discussion of the merit of Count 6;

3) the merit of Count 2;

4) whether Town Law 6 is preempted to the extent it seeks to prohibit the possession, use or consumption of alcohol or controlled substances and the sale of controlled substances;

5) the merit of Count 4; and

6) whether Town Law 6 is severable.

A major reason for requiring further briefing in this action is that the response brief filed by defendant lacked sufficient detail to be of much assistance to the court. As an example, its memorandum of law does not address Counts 2, 3, 4, or 6, except to recite the truism that the court should presume Town Law 6 to be constitutional.[19]

---

176, 196–97, 103 S.Ct. 2296, 2308–09, 76 L.Ed.2d 497 (1983); *ANR Pipeline Co. v. Iowa State Commerce Comm'n*, 828 F.2d 465, 473 (8th Cir.1987).

**19.** The Town would have this court apply a "beyond a reasonable doubt" standard when reviewing the constitutionality of Town Law 6, citing *Marcus Associates v. Huntington*, 45 N.Y. 2d 501, 410 N.Y.S.2d 546, 382 N.E.2d 1323

(1978). This is an absurd standard of decision, however, for a question of law such as whether Town Law 6 is preempted by federal law. It makes much more sense to apply this standard in the context of whether a property owner has established that he is unable to gain a reasonable return from his land under the permitted uses. *See* 45 N.Y.2d at 508, 410 N.Y.S.2d at 548, 382 N.E.2d at 1325. It also makes more sense

The court deems it appropriate to require defendant to be the first to file further submissions on the issues to be briefed. Defendant's submissions shall be served and filed on or before May 19, 1989. Plaintiffs' reply shall be served and filed on or before June 2, 1989. The court will inform the parties whether it will require further oral argument on these issues.

Either party may also wish to conference the unresolved matters with the court. If this is the case, that party should first pursue a discussion of the unresolved matters with the other party. Subsequent to such a discussion—or good faith attempts at discussion—the party may approach the court and request a conference.

■ As a final matter, the court considers whether it should preliminarily enjoin the Town from enforcing those portions of Town Law 6 upon which no permanent injunction is in place. In order to grant a preliminary injunction this court must conclude that there is both the possibility of irreparable harm to the plaintiffs and either a likelihood of success on the merits or sufficiently serious questions going to the merits to make a fair ground for litigation and a balance of hardships tipping decidedly in the plaintiffs' favor. *Stormy Clime Ltd. v. Progroup, Inc.*, 809 F.2d 971, 973 (2d Cir.1987). The court first concludes that with respect to whether Town Law 6 is severable there are sufficiently serious questions going to the merits to make a fair ground for litigation. *See Rockland County Builders Ass'n v. McAlevey*, 55 Misc.2d 695, 699–700, 286 N.Y.S.2d 431, 435–36 (Sup.Ct.1968) ("We note the existence of a separability clause in the ordinance; but where the legislation is so replete and so intertwined with unconstitutional provisions that its basic purpose cannot be salvaged, such clause is of no avail in saving any part of the vitiated legislation."), *aff'd as modified*, 29 A.D.2d 975, 289 N.Y.S.2d 452 (2d Dept.1968). Second, the court concludes that the enforcement of those sections of Town Law 6 of which the court has not permanently enjoined enforcement represents a possibility of irreparable harm to plaintiffs. That is, the auto insurance provision, the use of alcohol provision, the prohibition of tents and trailers, the license fee and application provisions, and the threat of fines and suspension of the license, in combination pose the *possibility* of ceasing plaintiff's businesses and thus the *possibility* of irreparable harm to the businesses and their reputations. As an additional factor, the court believes that the uncertainty resulting from an order only enjoining the enforcement of specific provisions of Town Law 6 would create the *possibility* of irreparable harm to plaintiffs. As in the analysis of the permanent injunction, the court concludes that the balance of hardships favors plaintiffs. Therefore, the court preliminarily enjoins the Town from enforcing those provisions of Town Law 6 upon which no permanent injunction has been issued.

It is So Ordered.

---

(than with a preemption claim) to apply this standard when deciding whether a landowner has established that an ordinance has no reasonable relationship to a legitimate governmental objective. *See id.* In essence, the "beyond a reasonable doubt" standard is suited to resolving questions which involve some element of fact.

A question of law is not decided by any standard of decision prescribed for a trier of fact. For instance, in *Burbank* the Court did not hold that the ordinance in question was preempted "beyond a reasonable doubt." The Court held that the ordinance was preempted, plain and simple. This court harbors grave doubts that the New York Court of Appeals intended the "beyond a reasonable doubt" standard to be applied to *pure* questions of law such as preemption. Thus in *Consolidated Edison Co. of New York, Inc. v. Town of Red Hook*, 60 N.Y.2d 99, 468 N.Y.S.2d 596, 456 N.E.2d 487 (1983), the Court of Appeals reviewed a town's law requiring licensing prior to conducting a site survey for a major power facility. The court held that the town's law was preempted by N.Y.Public Service Law, Article VIII. Nowhere in that decision does the court employ the "beyond a reasonable doubt" standard. Even if the Court of Appeals had issued a decision requiring the employment of the "beyond a reasonable doubt" standard when deciding an issue of preemption, such a decision would not be binding authority on this court when deciding a question of federal law.