In the Matter of TORSOE BROTHERS CONSTRUCTION CORP., Appellant, v BOARD OF TRUSTEES OF THE INCORPORATED VILLAGE OF MONROE, Respondent.

Second Department, December 1, 1975

*Joseph Deutsch* and *Paul J. LeVine (Joseph Deutsch* of counsel), for appellant.

*Albert Mishkin* for respondent.

MUNDER, J. The basic issue presented upon this appeal is whether a village may constitutionally utilize the fees derived pursuant to a local water tap-in fee ordinance to help offset related general municipal expenditures.

The facts are substantially uncontroverted. The respondent, the Board of Trustees of the Incorporated Village of Monroe (Board), enacted a series of ordinances relating to the consumption and use of water supplied by the village. Section 44-8 of the Village Code provides that no taps shall be made into the municipality's water system unless a permit to do so is first obtained, and a fee paid, in accordance with section 44-9 of the code. This latter section, as amended on August 14, 1973, provides that "tapping fees will be in accordance with the current fee established by" the Board. On the same date the Board promulgated a fee rate schedule which had an escalating scale; the fee for a 10-inch tap, the size needed in this case, is $15,000. On January 23, 1974, the Board, upon the recommendation of the State Board of Health, and in the interest of public welfare and safety, declared a moratorium on all new water taps not previously approved as of that date until December 31, 1974 (which date was later extended by the Board until April 1, 1975).

On June 4, 1974 the Board passed a resolution authorizing a bond issue in the amount of $1,840,000 for the purpose of financing improvements to the village's water system.

Thereafter, in June, 1974, the petitioner purchased certain property within the village as to which a subdivision map had been filed. The petitioner agreed, *inter alia,* to abide by the Board's lawful regulations, to secure necessary permits and to

replace an existing village water line. The petitioner made all of the necessary improvements, including the laying of a new 10-inch line, and sought permission to reconnect the new line with the old line at two locations. The Board refused the petitioner's request for permission to make the connections until tapping fees in the amount of $30,000 were paid. Since the institution of this action the Board has modified its position to the extent of requesting a $15,000 fee. After its informal objection to the imposition of the fee was rejected, the petitioner commenced this article 78 proceeding challenging the validity of the fee schedule.

Before discussing the substantive issues, I shall first treat the procedural question raised. The fixing of rates and fees to be charged for municipal services is a legislative act, particularly where no provision has been made for notice and a hearing (cf. *Matter of Lakeland Water Dist. v Onondaga County Water Auth.,* 24 NY2d 400, 407). The general rule is that an article 78 proceeding is an inappropriate vehicle with which to test the constitutionality of legislative enactments (see *Matter of Overhill Bldg. Co. v Delany,* 28 NY2d 449, 458; *Matter of Lakeland Water Dist. v Onondaga County Water Auth., supra,* pp 407–408). However, since the Special Term had jurisdiction over the necessary parties, and as the proceeding was a "civil judicial proceeding" within the meaning of CPLR 103 (subd [c]), the Special Term properly determined that the proceeding could continue in the form of an action for a declaratory judgment (see *Matter of Overhill Bldg. Co. v Delany, supra; Matter of Lakeland Water Dist. v Onondaga County Water Auth., supra).*

Essentially, the remaining arguments are addressed to the validity of the fee schedule. Since a municipal corporation or village has only such authority as is conferred on it by statute (together with the powers reasonably incident to the authority conferred), the tap-in fee ordinance must be evaluated in the light of its enabling acts (see *Whittaker v Village of Franklinville,* 265 NY 11; *Incorporated Vil. of Mill Neck v Fronsdal,* 39 AD2d 549). Sections 11-1104 and 11-1106 of the Village Law confer upon villages the power to establish or acquire a system of water works. Section 11-1108 of the Village Law places the control and supervision of a water system so acquired or established in the local Board of Water Commissioners. That board has the obligation and power to repair, extend or approve existing facilities (Village Law, § 11-1108).

Supply pipes may only be connected to the municipality's mains "by the permission and under the direction of the board of water commissioners and in accordance with their rules and regulations" (Village Law, § 11-1112, subd 1). Additionally, sections 11-1112 and 11-1114 of the Village Law provide for alternative procedures under which a village may recover the cost of laying and repairing supply pipes which are to be connected to village mains or distributing lines. Under section 11-1112 the village, once it has complied with the requisite statutory conditions, may recover the actual cost incurred by it in laying or repairing the connecting pipes, and in connecting them, from the owners of the affected properties. Under the alternative procedure set forth in section 11-1114, the village may impose a "uniform service charge" for each supply pipe connected. Thus, section 11-1114 provides a statutory basis for the imposition of a tap-in fee where the village has itself performed the work.

However, separate and apart from the imposition of a connection fee is the question of whether a village, as in the present case, may impose a permit fee for tap-ins where it has not performed the work. I believe that section 11-1112 of the Village Law provides the needed authority. As previously noted, connections may only be made with the permission of the Board of Water Commissioners, in accordance with its rules and regulations. The general rule is that the municipal power to regulate a business, occupation or activity embraces and implies the power to license as a mode of regulation and to impose a license fee sufficient in amount to cover the cost of regulation (see 9 McQuillin, Municipal Corporations [3d ed rev], § 26.27; cf. 11 McQuillin, Municipal Corporations [3d ed rev], § 31.31). Accordingly, the village, having the power to supervise and regulate connections into its water mains, may require the obtaining of a permit and legitimately impose a fee for the issuance thereof as a regulatory measure.

However, the Board has admitted that the fees collected pursuant to the amended schedule would be used to liquidate a portion of the previously-mentioned bond issue. Indeed, the main thrust of its argument on appeal is to this effect. The essential question then becomes whether the respondent may use its tap-in fee schedule for the purpose of defraying a portion of the cost of maintaining and improving its water system. I conclude that such action would clearly be improper. The Board's permit fee is sustainable solely as a regulatory

measure. It is well settled that where a license or permit fee is imposed under the power to regulate, the amount charged cannot be greater than a sum reasonably necessary to cover the costs of issuance, inspection and enforcement (see *Town of North Hempstead v Colonial Sand & Stone Co.,* 14 Misc 2d 727, 733; *Adlerstein v City of New York,* 11 Misc 2d 754, 755; 9 McQuillin, Municipal Corporations [3d ed rev], §§ 26.29, 26.36). To the extent that fees charged are exacted for revenue purposes or to offset the cost of general governmental functions they are invalid as an unauthorized tax (see *Matter of Hanson v Griffiths,* 204 Misc 736, 738; cf. *State University of N. Y. v Patterson,* 42 AD2d 328).

Moreover, the exclusive means authorized by statute to recoup the cost of improving and extending a village water system are general taxation, special benefit assessment and water rents (see Village Law, §§ 11-1108, 11-1118; *Board of Educ. of Cent. School Dist. No. 2 v Village of Alexander,* 197 Misc 814; 24 Opns St. Comp., 1968, p 368; 23 Opns St. Comp., 1967, p 473). The permit fees charged by the Board do not come within the meaning of any of these charges. Accordingly, the fee schedule, as applied, also runs afoul of section 2 (subd [c]) of article IX of the New York State Constitution, as a local ordinance which conflicts with a State statute.

In summary, the tap-in fee schedule promulgated by the Board pursuant to section 44-9 of the Village Code is invalid, *as applied,* for the reasons indicated above. However, a hearing must be held to determine whether the schedule may be upheld as a regulatory measure. It would appear that a $15,000 fee for a water tap-in permit is clearly disproportionate to the cost of issuance, inspection and regulation. However, such a determination may only be made after the presentation of all relevant evidence.

RABIN, Acting P. J., HOPKINS, CHRIST and SHAPIRO, JJ., concur.

Order-judgment of the Supreme Court, Orange County, dated May 5, 1975, modified by deleting the first two decretal paragraphs thereof and substituting therefor (1) a provision declaring that (a) respondent has properly enacted an ordinance requiring the obtaining of a permit to tap into the village's water lines upon payment of a permit fee and (b) that the fee promulgated pursuant to section 44-9 of the Village Code of the Incorporated Village of Monroe is unconstitu-

tional, *as applied,* to the extent that it is a revenue-raising device and (2) a provision directing that a hearing be held at Special Term limited to the issue whether the fee imposed pursuant to the ordinance is valid as a regulatory fee. As so modified, order-judgment affirmed, without costs.