OPINION OF THE COURT
Fuchsberg, J.
In a declaratory judgment action, plaintiffs Suffolk County Builders Association and certain individual builders challenge the validity of a schedule of site inspection charges promulgated by the defendant Suffolk County Department of Health Services. The regulation in question, section 301 (subd 1, par [a]) of the Suffolk County Sanitary Code, was adopted by the County Board of Health in September, 1975 pursuant to the *617 authority delegated in section 347 of the Public Health Law. It purports to empower the Commissioner of Health Services, the presiding member of the board and the head of the county health department, to "establish a schedule of and impose fees for the consideration of applications for the issuance of licenses, approvals or permits consistent with the cost of examination and field inspections”. Essentially at issue is the power of the commissioner to impose any charges at all and the propriety of those here established.
Shortly after section 301 was adopted, under the commissioner’s direction, the health department undertook a study of the expenses the county incurred incident to the issuance of health permits for water service and sanitary facilities for new construction. The factors that the study took into account consisted of approximations of the actual cost of performing the related services by the department’s general engineering unit in 1974 (the last full year before the section was enacted), the number of actual inspections of both commercial and residential construction projects for that year, and an estimation of the time required for inspecting and processing the various applications. Candidly conceding that the end result was only a "rough estimate” of the cost of the entire permit issuance program, the commissioner arrived at a figure indicating that the total cost to the county in 1974 was $545,000.
Finally established by the commissioner in February, 1976, the schedule that eventuated from the cost study imposed fees ranging from $25 to $140 for the issuance of a health department permit for residential construction, depending on whether the particular plot was serviced by public or private water and sanitary facilities and, in the instance of a parcel serviced by both private water (wells) and private sanitary facilities (cesspools), upon the size of the parcel. A separate, higher fee schedule was applicable to commercial construction. Based on an annualized projection of revenue for 1976, a total of almost $500,000 was collected in permit fees; the cost of issuing permits for 1975, however, had risen to $585,000.
Plaintiffs’ attack is three-pronged. Two of their grounds rest on an ultra vires theory, namely, that the County Board of Health lacked either express or implied statutory authority to impose the fees, and that, even if the board did have such authority, it was improperly delegated to the commissioner and the department, a unit of local government never invested with any such powers by the Legislature. The third, a *618 fallback position, concerns the method by which the commissioner computed the schedule. In scattershot manner, the plaintiffs complain of things as disparate as a claim that the study bunched the time periods spent in inspecting commercial parcels with those for single-family residential sites, that too much of the inspectors’ working time was wasted and that State aid grants to the local government had not been proportionately credited against the cost of running the department in computing the cost of the permit issuance procedure.1 Overall, displaying a rather excessive confidence in the infallibility of statistics, plaintiffs argue that the schedule was arrived at by a process too heavily dependent on subjective estimates to form a sufficient basis for fixing the costs. They further would have us conclude that, as a consequence, the amounts permit applicants are required to pay are in tribute under an unauthorized revenue-producing measure.
The Supreme Court, agreeing with the first two contentions and, under its approach, apparently finding it unnecessary to reach the third, declared the section under attack invalid. The Appellate Division, in a conclusory memorandum reversing, rejected all three of plaintiffs’ arguments. We agree with its determination.
We deal first with plaintiffs’ claim that the board lacked the power to levy fees for health permits. Subdivision [1] of section 347 of the Public Health Law delegates a broadly framed grant of authority to all county boards of health to "formulate, promulgate, adopt and publish rules, regulations, orders and directions for the security of life and health * * * not * * * inconsistent with the provisions of this chapter and the sanitary code”. Though the statute nowhere provides explicitly for the imposition of permit fees by the board, in other contexts the power to impose reasonable fees in connection with effective regulation has been implied from similarly broad delegations (see Jewish Reconstructionist Synagogue of North Shore v Incorporated Vil. of Roslyn Harbor, 40 NY2d 158, 163-165 [upholding ordinance imposing set fees of $60 for a variance and $50 for a permit plus actual costs of zoning appeals board’s consideration of application]; City of Buffalo v Stevenson, 207 NY 258, 262-263 [validating a city’s power to levy fees for opening of pavement]).
However, plaintiffs argue that there exists no valid basis for *619 implying such power because explicit authorization for the health commissioner’s collection of a fee is found in another section of the statute (Public Health Law, § 352, subd 4 [fees collectible from patients or from person or agency responsible for their care for services rendered by county-operated institutions]). We hardly think that the expansive mandate conferred by section 347 should be negated on the strength of so ambiguous an inference as might be drawn from this single instance of express legislative authorization. Moreover, local authorities traditionally have been accorded latitude in adopting regulations directly affecting the health of those within their province (see Lang’s Creamery v City of Niagara Falls, 251 NY 343, 346). And the breadth of the regulatory power delegated by the Legislature, bounded only by "the security of life and health” (cf. Matter of Levine v Whalen, 39 NY2d 510, 517 ["protection and promotion of the health of the inhabitants of the state”]), cannot be deemed otherwise than as encompassing the board’s enactment here.
The power to regulate subsumes the concomitant power to license and to set fees reasonably related to the cost of licensing (see City of Buffalo v Stevenson, supra, p 262; Matter of Torsoe Bros. Constr. Corp. v Board of Trustees of Inc. Vil. of Monroe, 49 AD2d 461, 464; 9 McQuillin, Municipal Corporations [3d ed rev], §§ 26.27, 26.28). For, without the power to do so, a local governmental agency might well find itself without the means to fulfill its statutory imperative. Thus the power to enact fees may be implied, though, because its provision is then not spelled out in so many words, it must be regarded as circumscribed by a similarly implied limitation that the fees charged be reasonably necessary to the accomplishment of the regulatory program (Jewish Reconstructionist Synagogue of North Shore v Incorporated Vil. of Roslyn Harbor, 40 NY2d 158, 163, supra).
Nor, as plaintiffs urge, is this implied power to set fees peculiar to municipalities. In this regard, given that agencies and municipal corporations both derive their authority from the Legislature, we reject any attempt to base a distinction in the implied powers that each is permitted to wield on whether they are exercisable by one of these governmental entities or the other.
 We pass next to plaintiffs’ contention that the board’s delegation to the commissioner and, hence, to the health department of the power to establish the fee schedule was *620 unlawful. Well settled is the principle that legislative delegations of power to administrative bodies are legitimate so long as adequate standards exist to channel the exercise of that power (Matter of Levine v Whalen, 39 NY2d 510, 515, supra, and authorities therein cited). Nevertheless, because flexibility is sought, the required standards need only be prescribed in so much detail as is reasonably practicable in light of the complexities of the area to be regulated.
The present case offers a variant of the traditional problem in that the issue is the validity of the subdelegation from the board to the commissioner and then in turn from the commissioner to the department, a creature of local government charged with implementing, among other things, the directives of the County Sanitary Code. But this distinction does not supply a sufficient reason to depart from the rules pertaining to legislative delegations, especially since the orderly functioning of an administrative body might otherwise be frustrated (see 1 Davis, Administrative Law Treatise, § 9.01; cf. Matter of McGovern v Patterson, 273 App Div 35, 38-39, affd 298 NY 530). It is a commonsense proposition that subdelegation is an inevitable incident of hierarchical organization; the issue then is one of degree. In our view, the board acted well within the parameters of its discretion in appointing the commissioner — its presiding officer and the one charged with powers of investigation and enforcement through the local health agency — to administer the permit fee program. Thus, the initial grant of authority to the board having encompassed the power to levy fees, the board did no more than take the reasonable step of commending the responsibility to the officer and department most capable of effectively performing that task.
We turn now to the point that the fees imposed by the commissioner were not, in fact, "consistent with the cost of examination and field inspections” because the cost figures on which the fee schedule was based were drawn in part from rough estimates of the previous year’s expenses rather than from more precise statistical formulae. To support it, plaintiffs place much reliance on the fact that judgments and estimates rather than numerically accurate calculations alone led to the fees proclaimed by the schedule. Doing so, they fail to recognize that bare numbers may be more deceptive than words. To be sure, things stated in terms of decimal points and fractions *621 do carry an air of cold neutrality, but, except in a world of absolutes, as respected observers of life as diverse as Mark Twain and Benjamin Disraeli have had occasion to note, statistics can prove anything (see, generally, Lepham, Random Numbers, Harper’s [Oct., 1976], pp 10-12; Time, Sept. 8, 1967, p 29). Thus, though often in the end but an "unsupported opinion”, a statistic acquires an existence independent of the ultimate fact it is intended to establish (Holland v United States, 348 US 121, 128; Berley Inds. v City of New York, 45 NY2d 683, 688), an attribute that oft renders difficult any attempt to controvert or evaluate the underlying fact.
This is not to scoff at exact figures — when they are to be had. It is merely to observe that they are not necessarily the only means by which to arrive at a fair judgment of cost, all the more so when, as here, the department’s aim was not to record past experience but to predict what it would be in the future. Yet, here, the available cost figures were not ignored. The commissioner took those that were most recent and, where no time studies separating commercial from noncommercial inspections had been made in the past, almost necessarily placed reliance on estimates instead. Judgmental exercise was also unavoidable in apportioning departmental costs between this program and the other functions jointly served by the health department.
In short, this was a situation in which both statistical information and human experience played a part. Together, they were calculated to attain a reasonable correspondence between costs and fees. Exact congruence between total expenses and total permit charges was not required (see Bon Air Estates v Village of Suffern, 32 AD2d 921, 922-923; McQuillin, Municipal Corporations, § 26.36; cf. Gannett Co. v City of Rochester, 69 Misc 2d 619, 629).[2] And, from this analysis, it also follows that the imposition of fees did not constitute an improper assumption of the power to tax (see Matter of Torsoe Bros. Constr. Corp. v Board of Trustees, 49 AD2d 461, supra).
For all these reasons, the order of the Appellate Division should be affirmed.
*622 Chief Judge Cooke and Judges Jasen, Gabrielli, Jones and Wachtler concur with Judge Fuchsberg.
Order affirmed, with costs.

. There was no State aid granted to the department as such.

. We note that, though the propriety of the method thus employed was therefore sufficient to permit its utilization when adopted, even as tested by hindsight the total cost of the fee program came in at a figure within 10% of the one on which the schedule was based — interestingly, a percentile by which licensees, not the county, were favored.