OPINION OF THE COURT
Edward J. Greenfield, J.
The mere mention of experimental medical research on incapacitated human beings — the mentally ill, the profoundly retarded, and minor children summons up visceral reactions with recollections of the brutal Nazi experimentation with helpless subjects in concentration camps, and elicits shudders of revulsion when parallels are suggested. Even without the planned brutality, we have had deplorable instances of overreaching medical research in this country.[1]
Nevertheless, the benefits of planned and objective research on human beings over the long run are self-evident for the intelligent development of effective therapeutic modalities with minimization of unanticipated and detrimental side effects. In recent years, researchers have made amazing advances in psychotropic drugs, neurobiology, genetic studies, and the like, with the promise of more to come by way of prophylactic intervention. Not all experiments can be restricted to laboratory animals. There comes a time, before a *64 new treatment can be accepted, when there must be an assessment of controlled experiments with human beings.
Sensitive to the need to balance the demands of scientific research with the rights of the individual human beings who may be the subject of experiments, lawyers, Judges, scientists, ethicists, and advocates for the voiceless have struggled to develop procedures and protocols which will permit effective research while safeguarding the rights of the individual.[2]
When there is a dispute as to the adequacy of the safeguards, contesting parties may fight out their differences in the Legislatures, before administrative agencies, or as a last resort, in the courts. This case presents such a dispute. At issue is the interrelation of Federal regulations, the New York State Public Health Law, and the regulations promulgated by defendant New York State Office of Mental Health (OMH) dealing with research on mental illness which involves human subjects who lack the capacity to provide informed consent to participation in the research, or who are minors.

The Parties and the Issues

The six plaintiffs herein who are identified by their initials are patients involuntarily hospitalized at various psychiatric facilities in New York State subject to supervision by the OMH, each of whom, after court proceedings finding them mentally incapable of giving or withholding informed consent, was ordered by a court to submit to beneficial medication over their objection. They claim that they are therefore likely to be considered "incapable” of consent and forced in the future to participate in research, as subjects, without their consent. The action is brought on their behalf, and on behalf of all patients in New York State psychiatric facilities by plaintiffs New York Lawyers for the Public Interest, Inc., and Disability Advocates, Inc., which are not-for-profit corporations established by Federal legislation. (The Protection and Advocacy for Mentally Ill Individuals Act of 1986, 42 USC § 10801 et seq.) These organizations provide protection and advocacy services on behalf of institutionalized mentally ill persons and are authorized to bring suit on behalf of those individuals pursuant to 42 USC § 10805 (a). Plaintiff Marvin Bernstein is *65 the Director of the Mental Hygiene Legal Service (MHLS), First Department, which organization provides legal assistance to mentally ill persons pursuant to New York Mental Hygiene Law article 47. MHLS is authorized to bring suit on behalf of individuals who are in institutions for the mentally ill in Bronx and New York Counties in order to safeguard the rights of these patients, pursuant to Mental Hygiene Law § 47.03 (e).
The defendant OMH is the agency which promulgated the challenged regulations which are the subject of this lawsuit. Defendant Richard C. Surles, as the Commissioner of defendant OMH, is the individual by whose authority and consent the research regulations were promulgated. Defendant Mark R. Chassin is the Commissioner of the New York Department of Health (DOH).
The plaintiffs seek a declaratory judgment as to the validity of the OMH regulations promulgated November 7, 1990 (14 NYCRR 527.10) which set forth the procedures to be followed for the nonconsensual participation by mental patients in potentially high-risk experiments. It is important to note at the outset that this action is not a broad-based challenge by the plaintiffs to any and all research performed on human subjects. It is limited to those procedures which may cause stroke, heart attack, convulsions, hallucinations, or other diseases and disabilities including death, and which, while possibly shedding light on possible future treatments to others, offer no direct therapeutic benefit to the participating subject. Plaintiffs contend that their challenge affects only approximately 10 studies which utilize incapable individuals or children, involve more than minimal risk, and which may involve drugs which have not yet been approved for use by the United States Food and Drug Administration (FDA). Of those 10 studies, approximately six are Federally funded research projects, and the remaining four are non-Federally funded. Defendants have set forth four ongoing projects which require the inclusion of incapable subjects, primarily schizophrenics with poor prognosis.
The experiments may include the administration of antipsychotic or psychotropic drugs, and other drugs not yet approved for prescription use in the United States by the FDA, and drugs approved by the FDA but used in experiments for conditions that were not tested as part of the FDA approval process. In addition, some experiments involve medical proce *66 dures such as spinal taps, skin biopsies, and brain scans after inhalation of radioactive gas.
Plaintiffs challenge the OMH regulations as violating basic common-law precepts as to the autonomy of the individual and the sovereignty and privacy rights over one’s own body, as well as the constitutional safeguards of due process and equal protection, and they charge that the regulations conflict with controlling State statutes. Defendants contend that the OMH regulations provide reasonable and adequate safeguards for minors and incapacitated persons who may be the subjects of experimental research and are wholly in compliance with applicable Federal and State law, although they contend their research is not subject to the provisions of article 24-A of the Public Health Law. Both sides agree that there are no substantial disputed issues of fact, and each side asks for summary judgment.
The OMH regulations challenged by the plaintiffs include the following situations:
—nontherapeutic research on adults deemed incapable of consenting, where consent may be given by family members or a self-declared "close friend”;
—nontherapeutic research on children where consent is given by a parent;
—research on children without consent of a parent;
—research with possible therapeutic effects on "incapable” adults and children, using drugs not approved by the Food and Drug Administration;
—research with possible therapeutic effects on "incapable” adults performed over their objection;
—research performed on patients without their knowledge.
In discussing these situations we bear in mind that some of the experimentation with new and untested drugs or techniques may hopefully prove to have some beneficial effect on the patient’s condition (therapeutic) while other experimentation will not benefit the particular patient but will provide the basis for research which may help other patients in the future (nontherapeutic).[3] We also recognize that the procedures challenged may involve "more than minimal risk.” However, *67 before we analyze the adequacies or shortcomings of the rules, we must first determine which set of rules is applicable.

The Challenged Regulations

The regulations at issue in this action are codified at 14 NYCRR 527.10, under the heading "Research,” and went into effect on November 7, 1990. The stated purpose of the regulations is "to ensure the protection of patients who participate in research while, at the same time, facilitating research into the very disorders from which they suffer and which underlie their impairment.” (14 NYCRR 527.10 [b]; see also, New York State Register, May 23, 1990, at 23.) The challenged regulations apply to all patients housed in mental health facilities in New York State which are operated or licensed by the OMH (14 NYCRR 527.10 [a]). Many of these patients, who comprise adults and children of all ages, are not competent to give their consent to participation as subjects in the research. The avowed purpose of the regulations is to promote mental health research while providing a panoply of protections for mental patients. The regulations: (1) define who is capable and who is incapable of consenting to participation in experimentation; (2) specify who may give consent for those who are incapable; (3) provide for institutional and professional review and oversight.
The regulations list eight "general requirements” for the participation in research (see, 14 NYCRR 527.10 [d] [l]-[8]). Included in these requirements is that participation in any research project shall not deprive any patient of the "rights,” privileges and protections provided to all patients (14 NYCRR 527.10 [d] [1]).
With respect to adults, the voluntary informed consent[4] of the patient, or his or her legally authorized representative,[5] must be obtained and documented (14 NYCRR 527.10 [e] [2] [i]). The patient’s treatment team must approve any participation in research which involves greater than minimal risk. All human subject research must be approved and reviewed by an institutional review board (IRB). If a patient lacks the capac *68 ity[6] to consent to participation, consent may be obtained from either an individual appointed pursuant to a duly executed durable power of attorney specifying the authority to consent or withhold consent to participation in research (14 NYCRR 527.10 [e] [2] [iii] [a]), or an individual designated by the patient to consent or withhold consent (14 NYCRR 527.10 [e] [2] [iii] [b]). If a person lacks the capacity to consent and has not designated a person under either of the above provisions, consent may be obtained from the patient’s legally authorized representative, defined in the regulations as the patient’s spouse, parent, adult child, adult sibling, guardian or a committee of the person which is authorized to consent to research (14 NYCRR 527.10 [e] [2] [iv]). In the absence of a person from this list, consent may be obtained from a close friend[7] or a court of competent jurisdiction if it finds there is a prospect of direct benefit. (Cf., Rivers v Katz, 67 NY2d 485.)
The informed consent is to be obtained by an "investigator” who must seek consent only under circumstances that provide the prospective subject or his or her representatives sufficient opportunity to consider whether or not to participate (14 NYCRR 527.10 [e] [1] [i]). For research that involves "more than minimal risk,”[8] the OMH regulations dictate the information that must be provided to the patient or the representative (see, 14 NYCRR 527.10 [e] [1] [ii] [a]-[h]).
One of the "rights” afforded to all patients pursuant to 14 NYCRR 527.10 (d) (1) is the right of the patient and any of his legally authorized representatives to withhold informed consent to participate as a research subject (14 NYCRR 527.10 [d] [1]). The regulations also specifically provide that no incapable *69 patient shall become or remain a research subject over the objection of the patient or any of the persons authorized to consent on behalf of the patient (14 NYCRR 527.10 [d] [2]; [e] [2] [vii]). Any objection to participation or continued participation of an incapable patient, or any of the persons authorized to consent on the patient’s behalf, must be honored unless a psychiatrist not associated with the research finds that it holds out a prospect of direct benefit to the patient and a court of competent jurisdiction specifically authorizes overruling the objection (14 NYCRR 527.10 [e] [2] [viii]).
With respect to patients under 18 years of age, consent must be obtained from a parent or legal guardian (14 NYCRR 527.10 [e] [3] [i]). If no parent or legal guardian is available, consent may be obtained from an adult family member who is involved in making treatment decisions for the child, or a court of competent jurisdiction. (Ibid.) However, the regulations specifically provide that if it be determined that parental or guardian permission is not a reasonable requirement to protect the patients, the consent requirement may be waived, provided an "appropriate mechanism” for protecting the children is substituted (14 NYCRR 527.10 [e] [3] [iii]). The regulations do not provide what such an appropriate mechanism would be.
The regulations also provide that the "assent”[9] of patients under 18 must be obtained and, when practicable, should be in writing (14 NYCRR 527.10 [e] [3] [iv]). The requirement of assent may be waived, however, if the capacity of the child is so limited that he or she cannot reasonably be consulted. (Ibid.) The regulations provide that such waiver may be granted for a category of subjects if their age or other characteristics indicate that as a group they lack sufficient capacity to assent. (Ibid.) A child’s objection to participation in a research project must be honored except when an independent child psychiatrist finds that the research holds out a prospect of direct benefit important to the health or well-being of the child and which is available only in the context of research (14 NYCRR 527.10 [e] [3] [v]).
As comprehensive as these regulations may appear to be, plaintiffs nevertheless take issue with what they claim to be gaps and deficiencies with these rules. Basically, they contend *70 that the regulations may permit incapable adults and children to be placed in high-risk experiments without their consent.
It has long been established that "[n]o right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his [her] own person”. (Union Pac. Ry. Co. v Botsford, 141 US 250, 251.) Justice Cardozo enunciated the rule in Schloendorff v Society of N. Y. Hosp. (211 NY 125) when he declared that "[e]very human being of adult years and sound mind has a right to determine what shall be done with his [her] own body.” (Supra, at 129.) This right is reflected in Public Health Law §§ 2504, 2805-d.
Thus, a competent adult may refuse to submit to lifesaving medical intervention, yielding only to a compelling State interest — which would cover preservation of the lives of others (e.g., through vaccination), but not self-preservation or the care for a minor child. (Matter of Fosmire v Nicoleau, 75 NY2d 218.) A greater problem arises when the patient is not of sound mind or adult years. Under those circumstances, a court may be called upon to make a judicial determination as to the patient’s capacity to make a reasoned decision to accept or reject treatment, and if lacking, to make its own decision as to the proposed medical course, on a risks/benefits basis. (Rivers v Katz, 67 NY2d 485, supra [criticizing, in passing, the inadequacies of the regulations formulated by the Department of Mental Health].)
What is most objected to are the provisions for substituted consent by surrogate decision makers. Courts tread cautiously when third parties are relied on to make decisions for an incapable patient (see, Matter of Storar, 52 NY2d 363, cert denied 454 US 858), especially where the patient’s wishes are unascertainable. (Matter of O’Connor, 72 NY2d 517; Matter of O’Brien, 135 Misc 2d 1076.) When the proposed medical course does not involve an emergency and is not for the purpose of bettering the patient’s condition, or ending suffering, it may be doubtful if a surrogate decision maker — a guardian, a committee, a health-care proxy holder, a relative, or even a parent could properly give consent to permitting a ward to be used in experimental research with no prospect of direct therapeutic benefit to the patient himself. "Parents may be free to become martyrs themselves. But it does not follow they are free, in identical circumstances, to make martyrs of their children before they have reached the age of full and legal *71 discretion when they can make that choice for themselves.” (Prince v Massachusetts, 321 US 158, 170.)
Questions are also raised as to the appropriate scope of monitoring and review of any approved experimental research. Before dealing with the constitutional dimensions of these and related problems, close scrutiny must first be given to alleged conflicts between the Public Health Law, and the OMH regulations.

Conflict with the Public Health Law

The plaintiffs challenge the authority of the Commissioner of OMH to promulgate its regulations on utilizing patients for research. Plaintiffs argue that any regulations pertaining to human subject research must be promulgated by the Commissioner of Health in accordance with Public Health Law article 24-A, which governs the use of human subjects in medical research projects in New York State.
The Public Health Law went into effect in 1975 (see, L 1975, ch 450). The stated policy and purpose of the statute is eloquently set forth in Public Health Law § 2440, which provides as follows: "The use of human subjects in medical research projects has brought about many beneficial scientific advances resulting in the increased health and well-being of the human race. Safeguarding the rights and welfare of individual human subjects in the conduct of these human research projects is a matter of vital state concern. Every human being has the right to be protected against the possible conduct of medical or psychological research upon his body without his voluntary informed consent. Human research may effect dangerous and unanticipated results causing irreversible damage to the human subject. Accordingly, it shall be the policy of this state to protect its people against the unnecessary and improper risk of pain, suffering or injury resulting from human research conducted without their knowledge or consent.”
The Public Health Law requires the voluntary informed consent of the human subject before any research may be conducted on him or her (Public Health Law § 2442). All human research must be conducted by a researcher and must be approved by a human research review committee (Public Health Law §§ 2443, 2444 [1], [2]). In addition to the voluntary informed consent of the proposed human subject, the consent of the human research review committee and the Commis *72 sioner of Health is required with relation to the conduct of human research involving minors, incompetent persons, mentally disabled persons, and prisoners (Public Health Law § 2444 [2]). The statute further provides that the Commissioner of Health "shall have the power to promulgate such rules and regulations as shall be necessary and proper to effectuate the purposes of this article.” (Penal Health Law § 2446.)
In opposition to the motion, the defendants counter that the Commissioner of OMH specifically is empowered to issue regulations regarding mental illness research by virtue of the Mental Hygiene Law. The Mental Hygiene Law is a comprehensive statute establishing and encompassing the rights and duties of the Department of Mental Hygiene (see, Mental Hygiene Law § 1.03 et seq.). The Department of Mental Hygiene is an agency of New York State that is composed of three autonomous offices: (1) the defendant Office cf Mental Health; (2) the Office of Mental Retardation and Developmental Disabilities; and (3) the Office of Alcohol and Substance Abuse (Mental Hygiene Law § 5.01).
In 1977, the Legislature passed the Mental Health Act (see, Mental Hygiene Law tit B) through which it established the OMH (Mental Hygiene Law § 7.01). Mental Hygiene Law article 7 declares that the State has a "responsibility for the prevention and early detection of mental illness and for the comprehensively planned care, treatment and rehabilitation of their mentally ill citizens.” (Mental Hygiene Law § 7.01.) Article 7 goes on to declare that it is the "policy of the state to conduct research and to develop programs which further prevention and early detection of mental illness; to develop a comprehensive, integrated system of treatment and rehabilitative services for the mentally ill.” (Ibid.)
The OMH was created to facilitate the implementation of these policies and to further advance the interests of the mentally ill. (Ibid.) The OMH and its Commissioner are charged with "the responsibility for assuring the development of comprehensive plans, programs and services in the areas of research, prevention, and care, treatment, rehabilitation, education, and training of the mentally ill.” (Mental Hygiene Law § 7.07 [a].) Finally, the Commissioner of OMH is given the power to "adopt regulations necessary and proper to implement any matter under his jurisdiction.” (Mental Hygiene Law § 7.09.) It is under the authority of these Mental Hygiene Law sections that the defendants argue the Commissioner of *73 OMH was empowered to promulgate the challenged OMH regulations for research on human subjects.
Although the Mental Hygiene Law and the Public Health Law appear at first blush to authorize the same conduct, a careful reading of the statutes reveal that it is only article 24-A of the Public Health Law which deals explicitly with human subject research. Article 24-A of the Public Health Law specifically was passed by the Legislature for the protection of human subjects and it is that statute which requires the Commissioner of Health to consent to all research involving minors and incompetent individuals. This conclusion is buttressed by the limited legislative history available for this statute, which reveals that it was enacted in order to safeguard the rights of individuals to ensure that they will not be made research subjects without their consent and/or against their will. Examples of the type of conduct the law is intended to protect against include the research conducted on mentally retarded children at Willowbrook State Hospital in 1968 with the coerced consent of the children’s parents, and cancer research involving the injection of a live cancer virus into geriatric patients who previously had not had any cancerous ailments (see, Mem of Assemblyman Alan G. Hevesi, "Protection of humans in research”, 1975 NY Legis Ann, at 274-275).
It is a fundamental principle of administrative law that agencies are possessed of only those powers expressly delegated by the Legislature, together with those powers required by necessary implication (Suffolk County Bldrs. Assn. v County of Suffolk, 46 NY2d 613). Even when broad rule-making authority has been granted, an agency cannot promulgate rules in contravention of the will of the Legislature (Finger Lakes Racing Assn. v New York State Racing & Wagering Bd., 45 NY2d 471, 480).
The Mental Hygiene Law is concerned generally with the care, treatment and rehabilitation of the mentally ill. While the Mental Hygiene Law grants the Commissioner of OMH general authority to develop comprehensive plans, programs, and services in the area of research, it does not specifically authorize him to make rules for research involving human subjects. Thus, whatever general authority the OMH may have, it cannot override the specific legislative mandate which has been granted to the Commissioner of Health to promulgate rules governing human subject research. The determination of the statutory authority of the appropriate agency authorized to exercise rule-making power is governed *74 by the venerable rule of construction, expressio unius est exclusio alterius, that where a law expressly describes a particular act, thing, or person to which it shall apply, an irrefutable inference must be drawn that what is omitted or not included was intended to be omitted or excluded. (See, McKinney’s Cons Laws of NY, Book 1, Statutes § 240; see, Patrolmen’s Benevolent Assn. v City of New York, 41 NY2d 205, 208-209.) By clear implication, the Commissioner of OMH was not given the authority to promulgate regulations governing research on human subjects. The promulgation of regulations concerning research involving human subjects by the Commissioner of OMH would be a usurpation of the power which the Legislature specifically vested in the Commissioner of Health pursuant to Public Health Law article 24-A. Indeed, this is exactly what the OMH has done in issuing the challenged regulations. Therefore, the court declares that the OMH regulations for the conduct of human subject research were promulgated by the Commissioner of OMH beyond his authority and are thus invalid. Accordingly, that branch of plaintiffs’ motion for summary judgment declaring the regulations codified at 14 NYCRR 527.10 as invalid and unenforceable is granted.

Exemptions for Federally Funded Research

The determination as to the scope and superiority of the Public Health Law does not, however, control Federally funded research, since all Federally funded research is subject to the Federal regulations promulgated by the United States Department of Health and Human Services (HHS) for the protection of human subjects (see, 45 CFR part 46, subpart A —Basic Policy for Protection of Human Research Subjects). Although the Federal regulations, which are not as comprehensive as the OMH protocols, provide that they do not affect the applicability of any additional protections provided to human subjects by State or local laws (45 CFR 46.101 [f]), the Legislature of this State has expressly exempted Federally funded research from compliance with Public Health Law article 24-A. Specifically, Public Health Law § 2445 provides that the provisions of article 24-A "shall not apply to * * * research [that] is subject to, and which is in compliance with, policies and regulations promulgated by any agency of the federal government for the protection of human subjects.” Thus, defendants are not prohibited from conducting Feder *75 ally funded research which is subject to the Federal regulations and which is overseen by the HHS.
Defendants argue that even with respect to non-Federally funded research, they are not subject to the provisions of Public Health Law article 24-A, because of their Federally approved Multiple Project Assurance (Assurance) of compliance with the HHS regulations. The Assurance obligates the Department of Mental Hygiene and its component agencies, of which OMH is one, to give assurance that they will comply with the HHS regulations, as specified in the Assurance. The Assurance is a "Multiple Project” assurance because it applies to all research projects sponsored or conducted by the Department of Mental Hygiene. The Assurance obligates OMH to meet all of the requirements set forth in 45 CFR part 46 for all such research "without regard to source of funding.” The only exception, however, is that for non-Federally funded research, the Department of Mental Hygiene specifically exempted itself from the obligation to report certain information to the HHS, including reporting unanticipated problems involving risks to subjects or others, serious or continuing noncompliance with the Federal regulations or the requirements or determinations of the Institutional Review Board (IRB), and any suspension or terminations of IRB approval for the research as required by 45 CFR 46.103 (b) (5). Instead, for non-Federally funded research, the Assurance requires that similar reports must be submitted to the Research Foundation for Mental Hygiene, Inc. and to the facility IRB. The Research Foundation for Mental Hygiene, Inc. is a not-for-profit corporation which plaintiffs allege is financially dependent upon, and intertwined with, the Department of Mental Hygiene.
Plaintiffs argue that by virtue of the exemption from the reporting requirements, the non-Federally funded research conducted by defendants is not subject to the Federal regulations and thus is not exempt from article 24-A of the Public Health Law. The court agrees. The unequivocal language of Public Health Law § 2445 does not allow defendants to pick and choose which of the Federal regulations they wish to be subject to and comply with in order to fall within the exemption. By exempting themselves from the reporting requirements which, in the words of the HHS are "the most important elements of the Assurance”, the defendants are not in compliance with 45 CFR part 46. Therefore, the defendants are not exempt from complying with the provisions found in Public Health Law article 24-A. Because they admittedly have *76 not obtained the consent of the Commissioner of Health to conduct the research involving minors, incompetents and mentally disabled persons (see, Public Health Law § 2444 [2]), the non-Federally funded research conducted by the defendants is in violation of article 24-A of the Public Health Law. So, too, is the research conducted on patients deemed incapable of consenting where consent to participate was obtained by a legally authorized representative as defined in the invalid regulations (see, 14 NYCRR 527.10 [e] [2] [iv]). Accordingly, that branch of plaintiffs’ motion seeking summary judgment declaring that non-Federally funded research is subject to the provisions of article 24-A of the Public Health Law is granted.
In light of the foregoing, plaintiffs’ common-law and constitutional challenges to the regulations are not reached and plaintiffs’ motion for summary judgment is granted to the extent indicated herein.
The cross motion for summary judgment is denied.

. Mackey v Procunier, 477 F2d 877; Barrett v United States, 660 F Supp 1291; Beecher, Ethics and Clinical Research, 274 New England J Med 1354 (June 1966), giving multiple examples of bizarre research; Rothman, Strangers at the Bedside, at 183, nn (1991), detailing the notorious Tuskeegee Study on syphilis, 1930-1970; Hevesi, Mem: An Act to Amend the Public Health Law, relating the Willowbrook hepatitis experiment (1975 NY Legis Ann, at 274-275).

. Frenkel, Human Experimentation: Codes of Ethics in Medical Experimentation (Carmi ed 1978); Dickens, Ethical Issues in Psychiatric Research, 4 Int J Law & Psychiat 271, nn; Jonas, Philosophical Reflections on Experimentation with Human Subjects.

. Examples include patients with developing irreversible neuropsychiatric disabilities such as the later stages of Alzheimer’s Disease or the dementia in the end stages of AIDS. Such persons may have given informed consent to research at an earlier stage when still lucid, or have given a proxy to someone who would make a later determination.

. Informed consent is defined as the "legally effective knowing consent of an individual or his legally authorized representative, with sufficient capacity to consent and so situated to be able to exercise free power of choice.” (14 NYCRR 527.10 [c] [4].)

. The regulations define who is considered a legally authorized representative at 14 NYCRR 527.10 (e) (2) (iv).

. Capacity is defined in the regulations as "the patient’s ability to understand the purpose, nature, risks, benefits and alternatives (including nonparticipation) of the research, to make a decision about participation, and to understand that the decision about participation in the research will involve no penalty or loss of benefits to which the patient is otherwise entitled.” (14 NYCRR 527.10 [c] [2].)

. A close friend is defined as "an adult who presents an affidavit to the director which states that 'he is a close friend of the patient and that he has maintained such regular contact with the patient to be familiar with the patient’s activities, health, and religious or moral beliefs and stating the facts and circumstances that demonstrate such familiarity.’ ” (14 NYCRR 527.10 [c] [3].)

. Although this term is not defined in the regulations, minimal risk means that "the risks of harm anticipated in the proposed research are not greater, considering probability and magnitude, than those ordinarily encountered in daily life or during the performance of routine physical or psychological examinations or tests.” (14 NYCRR 527.10 [b] [6].)

. Assent is defined as "an affirmative agreement to participate in research. Mere failure to object shall not, absent affirmative agreement, be construed as assent.” (14 NYCRR 527.10 [c] [1].)